2006-NMCA-131

144 P.3d 132

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Julian OCHOA, Defendant–Appellant.**

**No. 24,720.**

Court of Appeals of New Mexico.

Aug. 30, 2006.

Certiorari Granted, No. 30,016,
Oct. 12, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} This case requires us to determine if it is constitutionally reasonable for a police officer to stop a vehicle for a seatbelt violation when he does not personally observe a violation and does so only because he was told to do so by another police officer who wants to talk to the driver of the vehicle. We conclude that such a stop is not constitutionally reasonable. We therefore reverse the order of the district court denying Defendant's motion to suppress.

## BACKGROUND

{2} The facts in connection with Defendant's motion to suppress are not in dispute. Agent David Edmison of the Pecos Valley Drug Task Force was in Artesia, New Mexico conducting surveillance of a home that was suspected of being a place where drug activity was being conducted. He saw a black sport utility vehicle with an out-of-state license plate parked at the residence. The vehicle, which Agent Edmison did not recognize, remained parked in front of the home for some time and Agent Edmison later saw it being driven on a nearby street. Agent Edmison decided he wanted to find out who the driver was and what he had been doing at the house as part of his ongoing investigation. He therefore instructed Officer Romeo Martinez to stop the vehicle for a seatbelt violation because he saw that the driver was not wearing his seatbelt when he drove away from the house. Officer Martinez did not observe a seatbelt violation and stated that he could not see inside the vehicle because it had tinted windows. Nevertheless, Officer Martinez stopped the vehicle. Officer Martinez never stated whether the driver was wearing a seatbelt when he made contact with the driver, and the record is silent on whether a citation for a seatbelt violation was ever issued. Upon seeing the driver, Officer Martinez recognized Defendant and knew

that he had outstanding warrants for his arrest. Officer Martinez promptly arrested Defendant and Agent Edmison arrived at the scene to question Defendant. The vehicle was then searched and methamphetamine and drug paraphernalia were found.

{3} The district court concluded that one police officer may act upon information about a possible violation of the law communicated to him by another officer and denied the motion to suppress. Defendant entered a conditional plea of guilty to possession of methamphetamine and possession of drug paraphernalia, reserving the right to appeal the denial of his motion to suppress.

## DISCUSSION

{4} The Fourth Amendment to the United States Constitution protects the people of the United States against unreasonable searches and seizures by the government, and the New Mexico constitution protects the people against unreasonable searches and seizures. U.S. Const. amend. IV; N.M. Const. art. II, § 10. In *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) the United States Supreme Court held that as long as a police officer *could have* stopped a vehicle for a suspected traffic offense, his true motive for making the stop is constitutionally irrelevant under the Fourth Amendment. *Id.* at 809, 811–12, 116 S.Ct. 1769. The parties present us with the question of whether the New Mexico Constitution affords greater protection than the federal constitution. *See State v. Gomez,* 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (describing how to present and preserve for appellate review an argument that the state constitution affords greater protection than the federal constitution). In *Whren,* the police officers who stopped the vehicle actually observed traffic violations being committed. 517 U.S. at 808, 116 S.Ct. 1769. In this case, Officer Martinez did not personally observe any traffic violation. Our first task, therefore, is to determine whether Officer Martinez *could have* stopped Defendant.

{5} The critical inquiry under the Fourth Amendment is whether police conduct is reasonable. The traffic stop of a vehicle by police results in the temporary detention of its occupant, even if only for a brief period and for a limited purpose. Such a stop therefore constitutes a "seizure" of a "person" under the Fourth Amendment and it must be reasonable. *State v. Duran,* 2005–NMSC–034, ¶ 22, 138 N.M. 414, 120 P.3d 836. "Whether a traffic stop is conducted in a reasonable manner is determined by balancing the public interest in the enforcement of traffic laws against an individual's right to liberty, privacy, and freedom from arbitrary police interference." *Id.* In balancing these interests to determine whether the stop of Defendant's vehicle was "reasonable," our review is de novo. *See State v. Ryon,* 2005–NMSC–005, ¶ 11, 137 N.M. 174, 108 P.3d 1032 (stating that the determination of Fourth Amendment "reasonableness" is reviewed on appeal de novo).

{6} A police officer's traffic stop must be "justified *at its inception.*" *Duran,* 2005–NMSC–034, ¶ 23, 138 N.M. 414, 120 P.3d 836 (internal quotation marks and citation omitted) (emphasis added); *State v. Morales,* 2005–NMCA–027, ¶ 14, 137 N.M. 73, 107 P.3d 513. To be justified, the traffic stop must be based on a reasonable suspicion that a traffic law has been or is being violated. *See State v. Prince,* 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332 ("In the context of a Fourth Amendment analysis, an officer may stop a vehicle when he or she has reasonable suspicion that a traffic law has been violated."). In order for his suspicion to be reasonable, the police officer must be aware of specific articulable facts that, judged objectively, lead a reasonable person to believe a traffic offense has been committed. *State v. Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. Whether a police officer has a constitutionally adequate reasonable suspicion to stop a vehicle is, like reasonableness, a question subject to our de novo review. *Prince,* 2004–NMCA–127, ¶ 8, 136 N.M. 521, 101 P.3d 332 ("Legal issues such as whether there was reasonable suspicion to support an investigatory detention are reviewed de novo."); *Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964 ("Determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal.").

{7} We begin our analysis by examining the nature of a seatbelt violation. New Mexico law requires (with limited exceptions not applicable here) each occupant of a motor vehicle to have a seatbelt properly fastened about his body "at all times when the vehicle is in motion on any street or highway." NMSA 1978, § 66–7–372(A) (2001). A violation is a "penalty assessment misdemeanor" punishable by a $25 fine. NMSA 1978, § 66–8–116(A) (2006) (internal quotation marks omitted). This means that whenever a police officer charges a driver with such a violation, he must issue a uniform traffic citation to the driver, who has the option of agreeing to pay the assessment or to appear in court on the date specified in the citation. Upon signing the citation to do either, the driver is entitled to be released. NMSA 1978, § 66–8–123 (1989); see also NMSA 1978, § 66–8–117(A) (1990) (directing that for a penalty assessment misdemeanor, the alleged violator shall be offered the option of accepting a penalty assessment).

■ {8} Since a seatbelt violation is a misdemeanor, our misdemeanor arrest rule requires that the offense be committed in the officer's presence to justify a warrantless arrest for its violation. Cave v. Cooley, 48 N.M. 478, 152 P.2d 886 (1944). The court explained:

> A crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case.

Id. at 482, 152 P.2d at 888 (quoting State ex rel. Verdis v. Fid. & Cas. Co. of N.Y., 120 W.Va. 593, 199 S.E. 884, 887 (1938).) In City of Roswell v. Mayer, 78 N.M. 533, 534, 433 P.2d 757, 758 (1967), our Supreme Court reiterated that this is the correct lens under which to determine whether a misdemeanor is committed "in the presence" of the officer. The rule was applied in State v. Luna, 93 N.M. 773, 776, 606 P.2d 183, 186 (1980), where a police officer saw the defendant pull away from an intersection at a high rate of acceleration, causing his tires to spin. Id.

The officer stopped the defendant and cited him for the misdemeanor of exhibition driving. Id. While talking to the defendant, the officer noticed that the defendant's breath smelled of alcohol. Since the defendant was a minor, the officer then arrested him for violating an ordinance prohibiting a minor from allowing himself to be served alcohol outside the presence of his parents or guardian, another misdemeanor offense. Id. The court concluded that the offense of exhibition driving was committed in the officer's presence, but the liquor offense was not. Id. at 777, 606 P.2d at 187. "There is no testimony that the officer ever saw the defendant drinking or being served before the arrest. We therefore agree that the officer had no reasonable grounds to believe that the specific misdemeanor of allowing oneself to be served had been committed in his presence." Id. (Emphasis added.)

{9} The legislature has made specific exceptions to our misdemeanor rule. For example, NMSA 1978, Section 66–8–125(B) (1978) provides in part that a police officer may arrest without a warrant, any person present at the scene of a motor vehicle accident if he has reasonable grounds, based on personal investigation, "which may include information from eyewitnesses," to believe the person arrested has committed a crime. Id.; see also NMSA 1978, § 31–1–7(A) (1979) ("Notwithstanding the provisions of any other law to the contrary, a peace officer may arrest a person and take that person into custody without a warrant when the officer is at the scene of a domestic disturbance and has probable cause to believe that the person has committed an assault or a battery upon a household member."). However, there is no such exception for a seatbelt violation.

{10} Since Officer Martinez did not observe Defendant commit a seatbelt violation, we must determine whether other authority exists which allowed him to stop Defendant at the inception for this alleged violation. The district court concluded that Officer Martinez was allowed to act upon the information provided to him by Agent Edmison. This requires us to determine if the "police-team" concept as developed in New Mexico

permitted Officer Martinez to stop Defendant's vehicle.

{11} We first recognized the " 'police-team' " qualification to the "in the presence of" requirement for misdemeanor arrests in *State v. Lyon*, 103 N.M. 305, 308, 706 P.2d 516, 519 (Ct.App.1985), and *State v. Marquez*, 103 N.M. 265, 267, 705 P.2d 170, 172 (Ct.App. 1985), which were decided the same day. In *Lyon*, two officers were working as a team in arresting the defendant for DWI. The defendant was stopped and cited for an open container violation by a police officer who saw defendant driving with a beer bottle between his legs. *Id.* at 307, 706 P.2d at 518. The officer radioed for assistance because he was in a canine police unit and could not expose the defendant to danger from the dog, and because he needed to remain free to service the canine unit. *Id.* A second officer who was in the DWI unit responded and administered field sobriety tests to the defendant in the presence of the first officer. *Id.* When the defendant failed the field sobriety tests, the second officer arrested the defendant, again in the presence of the first officer. *Id.* While the second police officer never actually observed the defendant driving, we upheld the arrest under the " 'police-team' " qualification to the "in presence" requirement. *Id.* at 308, 706 P.2d at 519. "Under this qualification, a member of the police-team may arrest for a misdemeanor committed in the presence of another member of the police-team when their collective perceptions are combined to satisfy the presence requirement." *Id.*

{12} Similarly, in *Marquez*, three police officers were acting as a team to arrest a fleeing defendant. A police officer was driving a marked police unit and observed a crowd watching two women fighting. 103 N.M. at 265–66, 705 P.2d at 170–71. He stopped his unit, approached the crowd, announced he was a police officer (he was dressed in jeans), and was attempting to stop the fight, when pushing between the defendant and the officer took place. *Id.* The police officer identified himself as a police officer to the defendant and turned his attention back to the women. *Id.* The officer then told the defendant he was going to jail, and

the defendant left the area to avoid arrest. *Id.* at 266, 705 P.2d at 171. He slipped into the crowd, walking away, trying to be inconspicuous, and after reaching the rear of an adjacent service station, started to run away. *Id.* A second officer arrived, and the first officer pointed to the defendant, instructing him to arrest the defendant. *Id.* The second officer radioed a third officer to arrest the defendant, and the arrest was made. *Id.* We held that the three police officers were acting as a "police-team" as described in *Lyon* to arrest the fleeing defendant.

> [W]hen a misdemeanor is committed in the presence of a police officer [leaving the scene to avoid arrest] and information of such is promptly placed on the police radio or otherwise communicated and a description of the misdemeanant given, the arrest of the misdemeanent by another police officer within a reasonable time of receipt of the information is valid.

*Marquez*, 103 N.M. at 267, 705 P.2d at 172 (quoting *Lyon*, 103 N.M. at 309, 706 P.2d at 520).

{13} In *State v. Warren*, 103 N.M. 472, 709 P.2d 194 (Ct.App.1985), we adopted guidelines establishing *when* the "police-team qualification" applies. *Id.* at 477, 709 P.2d at 199 (internal quotation marks omitted). The first category of cases in which the exception is applicable are "situations in which the police officer must call in assistance for such reasons as inherent danger or criminal flight." *Id. Marquez* was cited as a specific example of this exception. *Id.* The second category of cases "involve situations where police officers are working collectively," and usually involve traffic surveillance. *Id.* "The link connecting these cases is that, in each of these cases, two or more officers are combining efforts in one investigation." *Id.* Since the police officers in *Warren* were not in the process of arresting a defendant who was in flight and they were not participating in a cooperative investigation when one of the officers allegedly saw the defendant commit a misdemeanor offense (drinking a beer in a public park), we held that the "police-team" qualification to the in presence requirement for a misdemeanor arrest was not applicable. *Id.* at 477–78, 709 P.2d at 199–200. We

concluded: "In the absence of some exigency or cooperative police effort, the police-team exception probably should not be invoked. To randomly apply the exception would effectively emasculate the felony-misdemeanor distinction." *Id.* at 478, 709 P.2d at 200.

{14} Tested by the foregoing standards, Officer Martinez's stop of Defendant's vehicle when he never saw a seatbelt violation was not reasonable. Defendant was not fleeing from arrest, Agent Edmison and Officer Martinez were not jointly participating in enforcing the seatbelt statute when Agent Edmison saw Defendant driving without a seatbelt fastened, and there were no public safety considerations or exigencies requiring the vehicle to be stopped. In this case, the public right to liberty, privacy, and freedom from arbitrary police interference outweighs the public interest in the enforcement of the seatbelt statute. *See Duran,* 2005–NMSC–034, ¶ 22, 138 N.M. 414, 120 P.3d 836. *Compare State ex rel. Taxation & Revenue Dep't Motor Vehicle Div. v. Van Ruiten,* 107 N.M. 536, 538–39, 760 P.2d 1302, 1304–05 (Ct.App. 1988) (concluding that a stop was justified by reasonable suspicion when a police dispatcher told the police officer that a person called the dispatcher and reported he observed a very intoxicated person leave a store in a described vehicle traveling in a certain direction and fifteen minutes later the police officer saw the described vehicle traveling in the reported direction); *People v. Wells,* 38 Cal.4th 1078, 45 Cal.Rptr.3d 8, 136 P.3d 810 (2006) (upholding the validity of a traffic stop based solely on an uncorroborated phoned-in tip that accurately described the vehicle and its location and related that a possibly intoxicated person was behind the wheel and "weaving all over the roadway" because (1) the circumstances were sufficiently exigent to pose a threat to public safety, and (2) the tip was reasonably considered reliable because of its contemporaneousness and specificity). We therefore hold that the stop of Defendant's vehicle by Officer Martinez was not constitutionally reasonable.

{15} A necessary element of the *Whren* analysis is a finding that the officer making the stop *could have* stopped the vehicle for a traffic violation. We hold that Officer Mar-

tinez *could not have* stopped Defendant's car. Therefore, we do not decide whether our citizens receive greater protection against unreasonable searches under N.M. Const. art. II, § 10, than what *Whren* provides.

## CONCLUSION

{16} The order of the district court denying Defendant's motion to suppress is reversed.

{17} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and IRA ROBINSON, Judge.