2007-NMCA-040

155 P.3d 769

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Johnny AGUILAR, Defendant–Appellant.**

**No. 26,087.**

Court of Appeals of New Mexico.

Jan. 25, 2007.

Certiorari Denied, No. 30,268, March 29, 2007.

Gary K. King, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Santa Fe, NM, Adrianne R. Turner, Assistant Appellate Defender, Albuquerque, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} In this case, we determine whether an officer, based on his observation that Defendant's vehicle had a dealer's temporary demonstration plate and was traveling at 2 a.m., had reasonable suspicion to stop the vehicle. After our review of the record, we conclude that the officer did not have the requisite individualized and particularized suspicion to justify the stop of Defendant's vehicle. We therefore reverse the district court's judgment affirming the metropolitan (metro) court's denial of Defendant's motion to suppress. We remand to the metro court with instructions to vacate the judgment and sentence.

## I. BACKGROUND

{2} The facts are undisputed and are based on the officer's testimony as follows. While the officer was on patrol at approximately 2 a.m., he noticed Defendant's moving

vehicle because the vehicle did not appear to have a license plate. As the officer neared the vehicle, he saw a temporary dealer tag in the right rear window. The temporary tag was a paper dealer tag and not a drive-out tag for a newly purchased vehicle. The officer could not read the tag, but it appeared valid on its face. In the experience of the state police, a lot of temporary dealer tags are stolen and misused. The officer thought the possibility that a person would be demonstrating a vehicle at 2 a.m. was unreasonable; thus, the officer suspected that Defendant was misusing the temporary dealer tag. The officer stopped Defendant's vehicle, asked Defendant to produce a driver's license, and asked him why he was driving the vehicle. Prior to making the stop, the officer did not notice anything else unusual; he had no other reason for the stop.

{3} The officer further testified to the following. State police patrolmen are ex officio agents of the State Taxation and Revenue Department (TRD), which regulates the use of dealer tags. The statutes give officers, as agents of TRD, the authority to investigate the use of a temporary dealer plate at any time of day in order to make sure that the vehicle is in the dealer's inventory. Thus, the officer routinely stops vehicles with dealer tags at any time of the day in order to determine whether the tags are being properly used. A driver must be engaged in a proper use of the vehicle to avoid getting cited for a violation of the statute. In our case, the officer stopped the vehicle to determine whether use of the tag was proper, instead of calling the dealer, because the dealership was closed at 2 a.m. Upon further questioning by defense counsel, the officer also testified that he believed the tag was not properly displayed because the tag, which should have been attached to the rear of the vehicle, was displayed on the rear window.

{4} After the officer's testimony, Defendant moved to suppress any testimony regarding the officer's investigation of Defendant after the stop, on the ground that the officer lacked reasonable suspicion for the stop. The metro court denied Defendant's motion. The court relied on these specific facts articulated by the officer: the officer

observed Defendant's vehicle traveling with temporary dealer tags at 2 a.m.; in the course of the officer's duties as an agent of TRD, he routinely stops vehicles with these tags in order to investigate; and the officer knew of the state police department's experience with the misuse of temporary dealer tags. Defendant then pleaded guilty to a first offense of driving while intoxicated (DWI) and reserved his right to appeal the denial of his motion to suppress.

{5} Defendant appealed to the district court, pursuant to Rule 7–703(A) NMRA. In a written memorandum opinion, the district court affirmed the metro court's sentencing order, which was entered after the denial of Defendant's motion. *See generally* NMSA 1978, § 34–8A–6(C) (1993) (providing that the metro court is the court of record for criminal DWI cases); Rule 7–703(J) (observing that appeals involving DWI are exceptions to de novo appeals from the metro court to the district court). The district court ruled that the following facts, as established by the officer's testimony, were sufficient to give rise to a reasonable suspicion that the tag was being misused: (1) the vehicle was traveling at 2 a.m. with a temporary dealer tag; (2) the tag was the type used for demonstrating a vehicle, pursuant to NMSA 1978, § 66–3–6(F) (1998); (3) a tag issued pursuant to Section 66–3–6(F) is not for use on a vehicle loaned to a customer for the customer's convenience; and (4) the dealership, under whose name the tag was issued, was closed. Defendant now appeals the district court's judgment.

## II. STANDARD OF REVIEW

{6} On appellate review of the metro court's denial of a motion to suppress, we must determine whether the law was correctly applied to the facts. *See State v. Eli L.,* 1997–NMCA–109, ¶ 6, 124 N.M. 205, 947 P.2d 162. We give deference to the metro court's determination of facts, together with all reasonable inferences arising from those facts, and view them in the light most favorable to the prevailing party. *See State v. Lopez,* 2005–NMSC–018, ¶ 9, 138 N.M. 9, 116 P.3d 80. "The ultimate determination of reasonable suspicion ... [,] however, is reviewed de

novo." *Eli L.,* 1997–NMCA–109, ¶ 6, 124 N.M. 205, 947 P.2d 162 (emphasis, internal quotation marks, and citation omitted). We review all legal issues de novo. *See State v. Krause,* 1998–NMCA–013, ¶¶ 3–4, 124 N.M. 415, 951 P.2d 1076.

## III. DISCUSSION

■ {7} The State asserts that the officer testified to specific, articulable facts constituting reasonable suspicion. The officer testified that he stopped the vehicle because, in his experience, temporary dealer tags were often stolen or misused and because Defendant's vehicle was traveling with a temporary dealer tag at 2 a.m., a time at which dealerships are not open. From these facts, the State asserts that the officer could reasonably suspect that Defendant was misusing the temporary dealer tag. We disagree.

■ {8} An individual's right to be free from unreasonable searches and seizures is protected by the Fourth Amendment to the United States Constitution. *State v. Patterson,* 2006–NMCA–037, ¶ 14, 139 N.M. 322, 131 P.3d 1286. "The Fourth Amendment is violated when an officer detains an individual with no more than a generalized suspicion, or unarticulated hunch or suspicion, because the government's interest in crime prevention will not outweigh the intrusion into the individual's privacy." *Id.* ¶ 16. Generalized suspicion or an unparticularized hunch that an individual is committing a crime is not enough to justify stopping a vehicle. *State v. Prince,* 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332. "A ... traffic stop must be justified at its inception[,]" *State v. Ochoa,* 2006–NMCA–131, ¶ 6, 140 N.M. 573, 144 P.3d 132 (emphasis, internal quotation marks, and citations omitted), *cert. granted,* 2006–NMCERT–010, 140 N.M. 675, 146 P.3d 810, and such a stop is justified when an officer has reasonable suspicion that a traffic law has been violated. *Prince,* 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332.

■ {9} To have reasonable suspicion in this type of case, a police officer must be aware of specific, articulable facts that, when judged objectively, would lead a reasonable person to believe a traffic offense has occurred or is occurring. *Ochoa,* 2006– NMCA–131, ¶ 6, 140 N.M. 573, 144 P.3d 132; *State v. Galvan,* 90 N.M. 129, 131, 560 P.2d 550, 552 (Ct.App.1977) ("Would the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate?"). A reasonable suspicion must be a particularized suspicion, based on all the circumstances, that the specific individual detained has broken or is breaking the law. *State v. Jason L.,* 2000– NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856; *see also Patterson,* 2006–NMCA–037, ¶ 24, 139 N.M. 322, 131 P.3d 1286 ("[A] finding of individualized suspicion requires the articulation of the suspicion in a manner that is particularized with regard to the individual who is stopped."); *Eli L.,* 1997–NMCA–109, ¶ 8, 124 N.M. 205, 947 P.2d 162 ("An investigatory stop requires an assessment that yields a particularized suspicion, one that is based on the totality of the circumstances and that raises a suspicion that the particular individual being stopped is engaged in wrongdoing." (internal quotation marks and citation omitted)).

{10} In our case, the officer testified that Defendant's vehicle was traveling at 2 a.m. with temporary dealer plates that are for use only when demonstrating a vehicle. *See* § 66–3–6(F) (authorizing the issuance of "temporary demonstration plates to dealers"). The officer knew that these types of plates are often misused or stolen. Thus, the officer decided to "check it out" in order to determine whether the tag was being used properly. These facts are not sufficient to support the type of particularized reasonable suspicion, regarding the specific individual detained, that is required to justify a traffic stop. The State does not contend that the officer had knowledge regarding misuse of the specific plate on the vehicle or misuse of temporary plates generally by the specific dealer to which the plate was issued. The officer did not testify about any specific facts regarding the temporary plate, the vehicle, or the driver that would create reasonable suspicion about that particular plate, vehicle, or driver. When the officer testified, he admitted that the temporary plate was valid on its face and that he had no specific knowledge regarding Defendant's use of the vehi-

cle. The officer agreed that the only thing Defendant "did wrong" was to drive a vehicle with a temporary demonstration plate at 2 a.m. These facts alone do not support an inference that Defendant was engaged in misuse of the temporary demonstration plate. Section 66–3–6(F) provides no time limitations for the activities permissible with a temporary demonstration plate. Thus, the officer's suspicion that Defendant had committed or was committing a violation of the law was not reasonable. *Cf. Galvan,* 90 N.M. at 132–33, 560 P.2d at 553–54 (concluding that one could not reasonably infer that the defendant saw the spotlight of the officer's car and took evasive action from the facts—the defendant's car turned off the county road onto an unmarked dead-end road at the same time the officers pulled off the road and turned off the patrol car's lights—because these facts merely established "neutral conduct"). These circumstances amount to nothing more than a generalized suspicion that there was a possibility that Defendant might have been engaged in misuse of the temporary demonstration plate. *See Patterson,* 2006–NMCA–037, ¶ 16, 139 N.M. 322, 131 P.3d 1286; *cf. Prince,* 2004–NMCA–127, ¶¶ 9, 12, 136 N.M. 521, 101 P.3d 332 (concluding that the officer did not articulate specific and particularized facts to expand the scope of the initial traffic stop when the officer knew that a police department suspected the defendant *"might* be involved with people . . . who *might* be manufacturing and trafficking" drugs and that the defendant, who might have drugs, was traveling a specific route in a specific vehicle with a specific license plate number). With these facts, the State's interest in preventing the misuse of temporary demonstration plates does not outweigh the intrusion into Defendant's privacy. *See Ochoa,* 2006–NMCA–131, ¶ 5, 140 N.M. 573, 144 P.3d 132 ("Whether a traffic stop is conducted in a reasonable manner is determined by balancing the public interest in the enforcement of traffic laws against an individual's right to liberty, privacy, and freedom from arbitrary police interference." (internal quotation marks and citation omitted)); *Patterson,* 2006–NMCA–037, ¶¶ 16, 25, 139 N.M. 322, 131 P.3d 1286 ("Viewing the totality of the circumstances, the behavior of the defendant was not criminal and did not give rise to individualized suspicion.").

{11} The State also contends that "the unlikely fact that there would be a demonstration of the vehicle at that time of night when no dealerships were open," combined with the officer's knowledge regarding the misuse of temporary dealer tags, is sufficient to create reasonable suspicion. Judging this fact objectively, we do not agree that the time of driving, combined with the officer's knowledge of general misuse of temporary tags by other drivers, creates reasonable suspicion. *See State v. Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964 ("Police officers possess reasonable suspicion when they are aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." (internal quotation marks and citation omitted)).

{12} Section 66–3–6(F) specifically provides that "temporary demonstration plates" are for "testing, demonstrating or preparing a vehicle for sale or lease." As previously noted, the statute does not provide any time-of-day limitation for the activities permitted with the use of a temporary demonstration plate. Accordingly, it is legal to allow an overnight test-drive of a vehicle, or even a few days' test driving. There is nothing unreasonable about such a practice. Thus, the facts relied upon by the officer were evidence of neutral conduct—conduct that is permissible under Section 66–3–6(F). We therefore conclude that one cannot reasonably infer, from these facts, that Defendant was misusing the temporary dealer tag. *See Galvan,* 90 N.M. at 132, 560 P.2d at 553. The officer articulated no specific fact that would set Defendant apart from an innocent driver using a dealer demonstration plate at the same time of day. *Cf. State v. Jones,* 114 N.M. 147, 151, 835 P.2d 863, 867 (Ct.App. 1992) ("The officers had no articulable facts that would set [the] defendant apart from an innocent gang pedestrian in the same area."). Without more, the officer's suspicion is not reasonable.

{13} The State relies on *Vela v. State,* 871 S.W.2d 815, 816–18 (Tex.Ct.App.1994), to support the argument that the officer had reasonable suspicion to stop Defendant's vehicle. In *Vela,* the court held that reason-

able suspicion was supported by the following facts: (1) the defendant's vehicle had a temporary dealer tag; (2) the vehicle was observed at about 8:20 p.m.; (3) the temporary tag was displayed in the rear license plate position; (4) in the officer's experience, a temporary tag was ordinarily mounted in the rear window when a vehicle was being demonstrated; (5) the vehicle did not display a buyer's temporary tag; (6) the vehicle was located at least fifteen miles, in another town, from the location of the dealership identified on the temporary tag; and (7) the officer was unaware of the possibility of running a computer check on the temporary tag numbers to determine whether the vehicle was stolen. *Id.* at 816–17. *Vela* is distinguishable from the case at hand.

{14} Significantly, in our case, the officer presented no evidence regarding the location of the dealership or the vehicle's distance from the dealership. Moreover, the officer did not testify and the State did not argue that the officer relied on his observation of the placement of the temporary tag to justify the stop. When questioned by defense counsel, the officer testified that the temporary demonstration plate was not properly displayed because it was in the rear window and not the rear of the vehicle. *Compare* NMSA 1978, § 66–3–18(A), (B) (1998) (providing that temporary demonstration plates shall be attached to the rear of the vehicle), *with* NMSA 1978, § 66–3–18(B) (2005) (providing that temporary demonstration plates shall be attached to the inside left rear window of the vehicle). However, it is unclear from the officer's testimony whether his determination regarding improper display of the temporary demonstration plate was made prior to the inception of the stop. *See Ochoa,* 2006–NMCA–131, ¶ 6, 140 N.M. 573, 144 P.3d 132. Since neither the State nor the officer contends that the officer's decision to stop the vehicle was based on his observation of the placement of the temporary plate prior to the inception of the stop, we cannot include this fact in the totality of the circumstances. *See State v. Robbs,* 2006–NMCA–061, ¶ 12, 139 N.M. 569, 136 P.3d 570 ("A police officer may make an investigatory stop if, under the totality of the circumstances, he has a reasonable and objective basis for suspecting a particular person has committed or is com-

mitting a crime."). We further note that the *Vela* court did not discuss whether the relevant statute contained any time limitations on permissible uses of the temporary demonstration plate—a consideration that we find pertinent to our analysis. Thus, we conclude that *Vela* is inapposite to the circumstances presented in our case.

{15} Cases from other jurisdictions support our decision. While we recognize that the temporary plates in the out-of-state cases are temporary buyer plates, rather than temporary dealer plates, we believe that the reasoning of these cases is applicable to our case. *Cf.* § 66–3–6(E) (providing for the issuance of temporary retail-sale permits). In *State v. Childs,* 242 Neb. 426, 495 N.W.2d 475, 481 (1993), the Nebraska Supreme Court observed that allowing an officer to stop a vehicle because it had a temporary decal would essentially replace the fundamental presumption of innocence with a presumption of criminal activity for every motorist driving a vehicle with a temporary decal. *See id.; see also State v. Butler,* 343 S.C. 198, 539 S.E.2d 414, 417 (Ct.App.2000) ("[W]e refuse to create the suspect presumption in this state that every motorist traveling the highways with a temporary tag is guilty of driving an unregistered or uninsured car and is subject to detention until he or she can prove otherwise."). The court in *Childs* further stated, "Without a reasonable standard for stopping motorists to check the validity of In Transit decals, a distinct and perhaps substantial segment of the motoring public is left to random and roving stops by police in the unfettered discretion of officers in the field." 495 N.W.2d at 481 (internal quotation marks and citations omitted). The court observed that less intrusive means were available to check the validity of temporary decals. *See id.* at 482.

{16} Similarly, in *Berry v. State,* 248 Ga. App. 874, 547 S.E.2d 664, 668 (2001), the court ruled that an officer's stopping a vehicle with a "drive-out tag" in order to investigate whether the car was stolen was impermissible, despite the officer's testimony that " 'we get a lot of stolen vehicles this way.' " The court concluded that without more, the officer had a "mere inclination or hunch that any car with a drive-out tag might be stolen." *Id.* at 668–69; *see also Butler,* 539 S.E.2d at

417 ("If we were to uphold the detention of [the] appellee ... upon the generalized statement that temporary tags are sometimes used in criminal activity, we would be sanctioning, in effect, the detention of the driver of any vehicle bearing temporary tags." (internal quotation marks and citation omitted)). The court in *Berry* reasoned that if an officer could stop a car on this basis, this rationale would permit a stop of any or all motor vehicles on the interstate highway because drugs are often transported on interstate highways. 547 S.E.2d at 668. The court stated that a particularized and objective basis for suspicion of criminal activity by the specific driver was required to ensure that the stop was not arbitrary. *Id.* For all of these reasons, we conclude that the officer in our case did not have reasonable suspicion to stop Defendant under these circumstances.

{17} Finally, we observe that our decision today does not impede investigations of specific incidents regarding temporary plates, which may have been reported stolen or misused, or investigations of vehicles reported stolen, which may display temporary plates. Notably, the officer in this case had no information regarding theft of a vehicle, theft of specific temporary plates, or misuse of temporary dealer plates by a specific dealer or other individual.

## IV. CONCLUSION

{18} We conclude that the specific facts articulated by the officer were not sufficiently individualized or particularized to create reasonable suspicion that Defendant had committed or was committing a traffic violation or other crime. Accordingly, we reverse the district court's judgment. Because the only evidence in support of Defendant's conviction was gained as a result of the illegal stop, we remand to the metro court with instructions to vacate the judgment and sentence entered below.

{19} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and MICHAEL E. VIGIL, Judges.