This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                          **NO. 29,423**

**MARK STEVENS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant appeals the district court's denial of his motion to suppress. On appeal, Defendant argues that (1) there was no reasonable suspicion to support the initial stop of a vehicle in which he was a passenger, (2) the officer expanded the stop into an unconstitutional frisk by failing to articulate safety concerns, and (3) subsequent to the frisk, the officer impermissibly searched his pocket without consent. Because reasonable suspicion that the occupants of the vehicle committed a burglary supported the initial stop, and the remaining issues were unpreserved, we affirm.

**BACKGROUND**

The facts of this case are undisputed. At 10:30 p.m., Officer Robert Chavez received a dispatch report stating that a possible burglary was in progress at the old farmer's market. At the time, the old farmer's market was undergoing destruction and was enclosed by a fence. Dispatch advised that a tipster reported that two men jumped over the fence at the old farmer's market and left the area in an older model, red Camaro with a black top. Upon hearing the dispatch report, Officer Chavez "suspected" that the two men were stealing copper wire from the old farmer's market because there had been a string of recent copper wire thefts from homes and businesses throughout the city.

Shortly after receiving the dispatch report, Officer Chavez observed an older model, red Camaro with a black top with three individuals, including two males,

inside. Officer Chavez initiated a traffic stop of the Camaro and observed a female, Teresa Tackitt, in the driver's seat and two males in the Camaro, including Defendant, who was seated in the front passenger seat. Upon approaching the Camaro, Officer Chavez observed that there were gloves, screwdrivers, and other tools on the floorboard. Officer Chavez asked Tackitt if she had been in the area of the old farmer's market site, and Tackitt replied "[a]pproximately an hour ago." Supporting officers were on the scene, and Officer Chavez ordered everyone out of the Camaro.

After the occupants exited the Camaro, Officer Chavez made contact with Defendant. Officer Chavez asked Defendant if he "could conduct a pat down for my safety and his." While conducting the frisk, Officer Chavez felt "something in his right front pocket" and asked Defendant what it was. Defendant said he did not know. Officer Chavez then asked for permission to retrieve it. Defendant responded that it was "kinda close to my[,]" apparently referencing that the front pocket was close to Defendant's groin area. Officer Chavez responded that he did not care and again asked to retrieve the item. Defendant then gave permission. Officer Chavez recovered a vial from Defendant's pocket, which contained a white substance later determined to be methamphetamine.

Officer Chavez arrested Defendant for possession of methamphetamine. Defendant filed a motion to suppress, arguing that his rights to be free of unreasonable

3

searches and seizures under the New Mexico and federal Constitutions were violated. In his motion to suppress, Defendant argued that no reasonable suspicion justified the initial stop of the Camaro or the continued detention of the occupants and therefore the admission of the methamphetamine into evidence was barred under the fruit of the poisonous tree doctrine. The district court denied the motion, finding that the initial traffic stop was supported by reasonable suspicion and that the frisk was therefore "an appropriate response to the situation." Defendant entered into a conditional plea, reserving his right to appeal the denial of his motion to suppress.

On appeal, Defendant argues that the district court erred in denying his motion to suppress because (1) no reasonable suspicion justified the initial stop of the Camaro, (2) Officer Chavez expanded the stop into an unconstitutional frisk, and (3) Defendant did not voluntarily consent to the subsequent search of his pocket.

**STANDARD OF REVIEW**

Reviewing a district court's denial of a motion to suppress involves mixed questions of law and fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. This Court reviews the surrounding circumstances using a substantial evidence standard, while viewing the facts in the light most favorable to the prevailing party. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. Whether the district court correctly applied the law to the facts is a legal inquiry, which we

4

review de novo.  *Urioste*, 2002-NMSC-023, ¶ 6.

**REASONABLE SUSPICION FOR INITIAL STOP**

Defendant argues that there was no particularized, reasonable suspicion justifying the initial stop of the Camaro.  As part of his argument, Defendant contends that the dispatch report was based on an anonymous, uncorroborated tip and therefore cannot be sufficiently reliable to establish reasonable suspicion.  Indeed, Officer Chavez did not refer to the tipster by name at the suppression hearing, and the State did not call her to testify.  However,"[o]n appeal, we are not limited to the record made on a motion to suppress, but may review the entire record to determine whether there was sufficient evidence to support the [district] court's denial of the motion to suppress." *State v. Johnson*, 1996-NMCA-117, ¶ 21, 122 N.M. 713, 930 P.2d 1165. The record indicates that the tip was from a citizen-informant and was therefore not an anonymous tip.  The statement of probable cause, written by Officer Chavez, indicates that "[d]ispatch informed officers that a female identified as Rachel Baumgartner had observed two males jumping over the fence" of the old farmer's market.  Because she was identified, Baumgartner was a citizen-informant. *Cf. State v. Contreras*, 2003-NMCA-129, ¶ 10, 134 N.M. 503, 79 P.3d 1111 (holding that a tip was an anonymous tip when the caller was described as a "concerned motorist" and was not identified).

"[A] citizen-informant is regarded as more reliable than a police informant or a crime-stoppers informant." *Id.*; *see State v. Michael G.,* 106 N.M. 644, 647, 748 P.2d 17, 20 (Ct. App. 1987) ("The willingness to identify oneself to the authorities as an eyewitness provides an accurate indicator of credibility."). Officer Chavez was therefore entitled to rely on the dispatch report without further establishing the reliability of Baumgartner's tip in determining reasonable suspicion because the source of the information was inherently reliable. *See State v. Ochoa*, 2008-NMSC-023, ¶ 20, 143 N.M. 749, 182 P.3d 130 (stating that when "facts originate from a third-party, then whether the stop was justified depends on the third-party's reliability as the source of such information"). We therefore turn to whether the tip, dispatch report, and Officer Chavez's knowledge of recent copper wire thefts in Deming provided sufficient reasonable suspicion to justify the stop. *See State v. Candelaria*, 2011-NMCA-001, ¶¶ 9-10, 149 N.M 125, 245 P.3d 69 (holding that a traffic stop is a seizure for Fourth Amendment purposes and must be supported by reasonable suspicion that a law has been violated).

Defendant argues that Officer Chavez lacked reasonable suspicion for the initial stop because the dispatch report only alleged "suspicious behavior" and not that a crime had actually been committed. Reasonable suspicion is particularized suspicion that the person detained is breaking or has broken the law. *State v. Rivas*, 2007-

NMCA-020, ¶ 7, 141 N.M. 87, 150 P.3d 1037. "Unsupported intuition and inarticulate hunches are not sufficient." *Id.* (internal quotation marks and citation omitted). "In determining whether reasonable suspicion exists, we apply an objective standard that takes into account the totality of the circumstances and all information available to the officer at the moment of the detention." *State v. Gutierrez*, 2008-NMCA-015, ¶ 14, 143 N.M. 522, 177 P.3d 1096 (internal quotation marks and citation omitted). "Reasonable suspicion must exist at the inception of the seizure." *State v. Garcia*, 2009-NMSC-046, ¶ 43, 147 N.M. 134, 217 P.3d 1032 (internal quotation marks and citation omitted).

Officer Chavez testified that the nature of the dispatch "was to inform officers that there was a possible burglary in progress." In *State v. Cobbs*, 103 N.M. 623, 625, 711 P.2d 900, 902 (Ct. App. 1985), an officer received a dispatch report relating to "'suspicious persons' and a possible residential burglary in progress" around 11:40 p.m. The dispatch report stated that two men were in a parked vehicle behind a residence and that the two men repeatedly approached the rear door of the residence and then returned to the vehicle. *Id.* The officer arrived at the scene and observed two men seated in a parked vehicle with its lights on. *Id.* The officer initiated a stop of the vehicle once it began to leave the residence. *Id.* This Court upheld the denial of a motion to suppress, holding that the contents of the dispatch resulted in the officer

being "amply justified" in stopping the vehicle. *Id.* at 627, 711 P.2d at 904.

Similarly, in this case, the dispatch stated that two men jumped over a fence of a business at night and entered a late model, red Camaro with a black top. Considering the similar time of night in *Cobbs*, and the similar behaviors engaged in at private property by the defendant in *Cobbs* and Defendant in this case, there was reasonable suspicion that the occupants of the Camaro committed a burglary. Officer Chavez was therefore justified in the initial stop of the Camaro after observing that there were two males inside. Officer Chavez's testimony that there had been a string of copper wire thefts in the city from homes and businesses in the area strengthens our conclusion that the stop was supported by reasonable suspicion.

Defendant relies on *State v. Galvan*, 90 N.M. 129, 560 P.2d 550 (Ct. App. 1977), and *State v. Aguilar*, 2007-NMCA-040, 141 N.M. 364, 155 P.3d 769, for the proposition that reasonable suspicion cannot be formed by "neutral conduct" or conduct that has "too many possible innocent explanations." In *Galvan*, this Court held that an officer did not have reasonable suspicion to initiate a stop when the defendant turned onto an unmarked road after seeing the spotlight of a patrol car. 90 N.M. at 132, 560 P.2d at 553. Although, the state attempted to justify the stop by characterizing the defendant's actions as "evasive," this Court held that such "neutral conduct" is not sufficient for reasonable suspicion. *Id.* at 132-33, 560 P.2d at 553-54.

8

In this case, while there may be innocent explanations, jumping over the fence of an enclosed, private business at night is generally not consistent with innocent behavior. Indeed, the conduct in *Galvan* of turning onto a public road was more consistent with innocent behavior. We therefore cannot characterize Defendant's conduct as "neutral conduct" insufficient to establish reasonable suspicion.

Defendant similarly relies on *Aguilar*, in which this Court addressed whether an officer's observation that the defendant was driving a vehicle with a dealer's temporary demonstration plate at 2:00 a.m. was sufficient to establish reasonable suspicion. 2007-NMCA-040, ¶ 1. This Court held that the officer did not have reasonable suspicion, because, although dealerships are not open at 2:00 a.m., there are no restrictions on the time of day the plates could be used and the officer did not have knowledge that temporary plates were reportedly being misused or stolen. *Id.* ¶¶ 10, 12. Therefore, the defendant's conduct was entirely consistent with innocent behavior. *Id.* ¶ 12. In this case, as we have previously determined, jumping over the fence of an enclosed, private business at night is generally not consistent with innocent behavior. Additionally, unlike *Aguilar*, there were reports of copper wire thefts from businesses throughout the city that strengthened Officer Chavez's reasonable suspicion determination. *Cf. id.* ¶ 17 (noting that the holding does not limit investigations when the officer has specific information regarding theft or misuse of

9

temporary plates).

**PATDOWN AND CONSENT TO SEARCH POCKET**

Defendant argues that, assuming the initial stop was justified, Officer Chavez impermissibly expanded the stop into an unconstitutional frisk of Defendant by failing to articulate any safety concerns, and, assuming the frisk was lawful, Defendant did not consent to the search of his pocket after the frisk. Particularly, Defendant argues that a protective frisk is only justified "when the officer reasonably believes the suspect is armed and presently dangerous" and that Officer Chavez "could not articulate anything about the stop that gave him reason to fear for his safety." *See State v. Pierce*, 2003-NMCA-117, ¶ 9, 134 N.M. 388, 77 P.3d 292 ("Police may initiate a protective patdown search for weapons if they have specific and articulable facts which they contend support their assessment of danger." (internal quotation marks and citation omitted)). Further, Defendant argues that Officer Chavez impermissibly seized the item in Defendant's pocket, without consent, even though he knew it was not a weapon. The State contends that Defendant failed to preserve the constitutionality of the frisk and search of Defendant's pocket, and, if preserved, Defendant consented to both the frisk and the search of his pocket.

"To preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked[.]" Rule 12-216(A) NMRA. In order to fairly

invoke a ruling, "an objection must be made with sufficient specificity to alert the mind of the trial court to the claimed error[.]" *State v. Riley*, 2010-NMSC-005, ¶ 24, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted).

In his motion to suppress, Defendant did not argue that the frisk and subsequent search of his pocket by Officer Chavez were unlawful or that he did not consent. The arguments and supporting authorities in Defendant's motion to suppress to the district court argue that (1) Defendant was seized without reasonable suspicion, (2) the tip relied on by dispatch and Officer Chavez was anonymous and uncorroborated, and (3) all evidence obtained thereafter is barred from admission under the fruit of the poisonous tree doctrine. Defendant made identical arguments to the district court at the suppression hearing. The arguments challenging the frisk and subsequent search of Defendant's pocket in this appeal are distinct from whether reasonable suspicion supported the initial stop. Defendant therefore did not fairly invoke a ruling from the district court on either issue and they were therefore not properly preserved. *See Riley*, 2010-NMSC-005, ¶ 24. We therefore do not address Defendant's arguments challenging the frisk and subsequent search of Defendant's pocket by Officer Chavez. *See State ex rel. Children, Youth & Families Dep't. v. Michael T.*, 2007-NMCA-163, ¶ 15, 143 N.M. 75, 172 P.3d 1287 (holding that because party "did not preserve [the] issue for appeal and because he does not argue that denial of his motion to suppress

11

was fundamental error, we do not address it now").

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**