This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40166**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**MARCUS COLEMAN,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert A. Aragon, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellant

Harrison, Hart & Davis, LLC
Nicolas T. Hart
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** This matter was submitted to this Court on the State's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**{2}** In this appeal, the State contends the district court erred by granting Defendant's motion to suppress on the basis that an officer conducting a traffic stop lacked reasonable suspicion to expand the scope of the stop by questioning Defendant regarding his travel. "Our review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Tuton*, 2020-NMCA-042, ¶ 8, 472 P.3d 1214 (internal quotation marks and citation omitted). "First, we look for substantial evidence to support the district court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186 (alteration, internal quotation marks, and citations omitted). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *Id.* (internal quotation marks and citation omitted). "To determine whether the detention was justified, we review the totality of the circumstances as a matter of law." *State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922 (internal quotation marks and citation omitted).

**{3}** In this case, Defendant's suppression motion argued the officer's expansion of the traffic stop was unjustified under Article II, Section 10 of the New Mexico Constitution. [RP 87-89] Accordingly, our analysis is not limited to assessing whether the officer's inquiries extended the duration of the traffic stop. *See Tuton*, 2020-NMCA-042, ¶ 9 ("The United States Supreme Court has held that an officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." (alteration, omission, internal quotation marks, and citation omitted)); *cf. State v. Olson*, 2012-NMSC-035, ¶ 10, 285 P.3d 1066 (noting that under the circumstances, the appellate court "need only to address the broader protections under Article II, Section 10 of the New Mexico Constitution"). "By contrast to the Fourth Amendment, Article II, Section 10 ordinarily requires that all questions asked during the investigation of a traffic stop be reasonably related to the initial reason for the stop." *Tuton*, 2020-NMCA-042, ¶ 10 (alteration, internal quotation marks, and citation omitted). "Unrelated questions are only justified (1) if supported by independent reasonable suspicion, (2) for reasons of officer safety, or (3) if the interaction has developed into a consensual encounter." *Id.* (internal quotation marks and citation omitted). "Questions about travel plans or history are not exempt from these requirements." *Id.*

**{4}** Here, the State does not contend that the officer's initial questions about travel were related to the reason for the traffic stop, were for reasons of officer safety, or that the interaction was consensual. Accordingly, the officer's inquiries were only permitted under the New Mexico Constitution if the questions were supported by independent reasonable suspicion. "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856. "The term reasonable suspicion does not lend itself to a neat set of legal rules." *Funderburg*, 2008-NMSC-026, ¶ 15 (internal quotation marks and citation omitted). "Whether police conduct is objectively reasonable is a legal question that is necessarily

fact-based and compels a careful balancing of constitutional values." *State v. Martinez*, 2020-NMSC-005, ¶ 16, 457 P.3d 254 (alterations, internal quotation marks, and citation omitted). "We have continually used a fact-based, case-by-case approach to determine . . . whether an officer had reasonable suspicion to expand the scope of his or her search or seizure during an investigatory stop." *State v. Duran*, 2005-NMSC-034, ¶ 34, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by State v. Leyva*, 2011-NMSC-009, 149 N.M. 435, 250 P.3d 861; *see also Leyva*, 2011-NMSC-009, ¶ 54 ("[O]ur cases construing Article II, Section 10 have persisted in rejecting bright-line rules.").

{5}     The State argues that the smell of marijuana coming from the car and later from Defendant provided the officer with reasonable suspicion to expand the traffic stop. [BIC 4-6] This argument fails to account for the fact-intensive inquiry required in our assessment of reasonable suspicion under the New Mexico Constitution, in which we consider the scope and extent of any intrusion in the context of the manner in which it arose. *See Duran*, 2005-NMSC-034, ¶ 35 (explaining that "[t]he particular facts of each stop and the intrusiveness of the questioning will dictate what questions are reasonable or unreasonable"); *State v. Guzman*, 1994-NMCA-088, ¶ 7, 118 N.M. 113, 879 P.2d 114 ("The determination of whether reasonable suspicion justifies a detention depends both on the probativeness of the articulable suspicious circumstances and the extent of the intrusion."); *see, e.g., State v. Van Dang*, 2005-NMSC-033, ¶¶ 14-16, 138 N.M. 408, 120 P.3d 830 (explaining that, under the circumstances, "the officer had a right to investigate whether the vehicle was stolen" and "[a]s part of that investigation . . . questions about travel plans would be reasonable," and separately analyzing "[t]he scope of the detention, and specifically whether the officer could then lawfully inquire about drugs"); *Tuton*, 2020-NMCA-042, ¶ 14 (explaining that the defendant's nervous demeanor "did not give rise to a reasonable suspicion sufficient to justify asking" a specific question about which friend the defendant had been visiting); *State v. Bell*, 2015-NMCA-028, ¶ 17, 345 P.3d 342 (noting that "the [s]tate has not asserted that the facts of the vehicle stop gave rise to any reasonable suspicion involving the [specific inquiry by the officer about] possession of certain weapons or corpses").

{6}     Because we must consider the reasonableness of the manner in which the stop was actually expanded, the fact that the officer smelled marijuana, which we acknowledge was illegal for nonmedicinal purposes at the time of the stop, is not, on its own, dispositive to our reasonable suspicion analysis. Moreover, any generalized concerns the officer may have had about the possibility of unlawful marijuana possession or use cannot be utilized to authorize a blanket investigation into any possible crime. *See Bell*, 2015-NMCA-028, ¶ 16 (reiterating that "under Article II, Section 10, both the duration and scope of a stop must be reasonable under the circumstances" and that "[t]his approach ensures that investigating officers do not engage in fishing expeditions during traffic stops" (internal quotation marks and citation omitted)). Rather, our analysis requires that we consider whether the officer had formed the requisite reasonable suspicion such that his *specific inquiries* about Defendant's travel were not unreasonable. We therefore assess whether the officer was justified in asking Defendant the initial questions "about the purpose of their trip and how they got

to California." [BIC 2] For the reasons that follow, we conclude the officer lacked reasonable suspicion to question Defendant about his travel plans and history.

**{7}** Initially, we observe that the officer's testimony did not contain any articulation as to why the smell of marijuana, alone, justified expanding the scope of the stop to ask about Defendant's travel. *See State v. Aguilar*, 2007-NMCA-040, ¶ 18, 141 N.M. 364, 155 P.3d 769 ("conclud[ing] that *the specific facts articulated by the officer* were not sufficiently individualized or particularized to create reasonable suspicion that [the d]efendant had committed or was committing a traffic violation or other crime" (emphasis added)); *State v. Prince*, 2004-NMCA-127, ¶ 17, 136 N.M. 521, 101 P.3d 332 (observing that a generalized suspicion is insufficient to justify a detention); *cf. State v. Anaya*, 2008-NMCA-020, ¶ 15, 143 N.M. 431, 176 P.3d 1163 ("[C]onduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop; but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld."). In addition, although the marijuana odor may have justified an inquiry by the officer about whether Defendant had any marijuana in the car or on his person, such was not the focus of the officer's initial questioning in this case. *Cf. Funderburg*, 2008-NMSC-026, ¶ 9 (explaining that the officer's suspicion about drugs or drug paraphernalia in the car "justified a brief detention long enough to ask [the d]efendant about drugs in the car"), *abrogated on other grounds as recognized by State v. Dopslaf*, 2015-NMCA-098, ¶ 11, 356 P.3d 559.

**{8}** The officer testified that the totality of the circumstances, including the odor of marijuana, an unprovoked comment by the passenger, irregular travel, and Defendant's manner of responding to questions, led the officer to believe that Defendant and the passenger may have been smuggling contraband. [BIC 6; RB 1-2] While interacting with Defendant, the officer noticed the time and date that the car had been rented, and then asked Defendant about the purpose of the trip and how Defendant and his passenger got to California. [BIC 2] In response to this inquiry, Defendant admitted they had flown to California the previous day, and "had difficulty explaining why they flew to California but were driving back east." [BIC 2] The officer testified that based on his training and experience, he knew that flying to a location and then driving back was common in smuggling operations. [BIC 2] The officer further relied on the manner in which Defendant responded to the officer's questions, as well as apparent inconsistencies between Defendant's story and the passenger's prior comment, as specific reasons why the officer's suspicions were heightened and to conclude that further investigation was warranted. [BIC 6-7]

**{9}** This testimony reveals that the officer's articulated suspicions for expanding the scope of the traffic stop were formed based in large part on Defendant's answers to the officer's questions about travel. [BIC 2, 6] However, the officer cannot permissibly use Defendant's responses to "justify expanding the scope of the detention to ask the questions in the first place." *Tuton*, 2020-NMCA-042, ¶ 13. Our law mandates that the officer was required to have reasonable suspicion *prior to* asking Defendant about the purpose of the trip and how Defendant got to California. "[F]acts discovered as a result of a seizure have no bearing on the legality of that seizure," and "[the d]efendant's

answers to [the officer's] questions may not be used to justify expanding the scope of the detention to ask the questions." *Id.*; *see also Jason L.*, 2000-NMSC-018, ¶ 20 ("Reasonable suspicion must exist at the inception of the seizure" and "[t]he officer cannot rely on facts which arise as a result of the encounter."). As the officer testified, his suspicions of smuggling were based on "the totality of everything that occurred during the traffic stop," including information gathered from his conversation with Defendant about travel. [11-12-21 CD 10:53:58-10:54:42]

**{10}** Despite the officer's stated reasons about why he believed further investigation was warranted, the State asks us to conclude that the officer had developed reasonable suspicion prior to his questioning, and without consideration of Defendant's responses to the travel inquiries. [RB 1-3] According to the State, prior to the officer's questioning, the officer's suspicions were aroused by the smell of marijuana; the passenger's unprovoked statement that the purpose of the trip was to meet other veterans, which the officer interpreted as an attempt to control the conversation and manage the officer's impression of the vehicle's occupants; and the officer's observation that the rental car had been rented the previous day. [RB 1-2] We disagree that the facts known to the officer prior to his questions about travel, without more, justified the officer's inquiries. In reaching such conclusion, we are mindful that these facts alone were not the basis for the officer's articulated suspicions about Defendant. *See Aguilar*, 2007-NMCA-040, ¶ 18 ("conclud[ing] that *the specific facts articulated by the officer* were not sufficiently individualized or particularized to create reasonable suspicion that [the d]efendant had committed or was committing a traffic violation or other crime" (emphasis added)); *cf. State v. Vandenberg*, 2003-NMSC-030, ¶ 31, 134 N.M. 566, 81 P.3d 19 ("[I]t is not the degree of nervousness that allows the officer to pat a defendant down, but instead *it is the articulation by the officer of specific reasons* why the nervousness displayed by the defendant caused the officer to reasonably believe that his or her safety would be compromised." (emphasis added) (internal quotation marks and citation omitted)). Rather, Defendant's admission, made in response to the officer's inquiry, about when Defendant flew to California, had "huge significance" to the officer. [RB 1-2]

**{11}** We likewise find Defendant's responses and demeanor in responding to the officer's questions to be significant. The State asserts that "the fact that the car was rented the previous day could well mean that they had flown to California, a sign that a smuggling operation might be underway." [RB 3] However, "[g]eneralized suspicion or an unparticularized hunch that an individual is committing a crime is not enough to justify" expanding the scope of a traffic stop. *Aguilar*, 2007-NMCA-040, ¶ 8. Prior to the officer's questioning and Defendant's responses about travel, "crucial details and particularized information regarding the alleged criminal activity that was occurring" were missing. *Prince*, 2004-NMCA-127, ¶ 17. At this point during the encounter, the officer suspected only that Defendant may have flown to California the previous day. It was not until Defendant confirmed the manner and timing of his travel to California that the officer felt something did not add up and could articulate specific facts suggesting that Defendant may have been smuggling. Although reasonable suspicion "may be based upon reasonable inferences drawn from [the] circumstances," *Funderberg*, 2008-NMSC-026, ¶ 24, the State has not identified anything in the record that would allow us

to conclude that the officer could have reasonably inferred, without Defendant's admission, that Defendant had traveled in a manner indicative of smuggling. Rather, in the absence of Defendant's responses to the officer's questions about travel, and specifically, without Defendant's admission that he had flown to California the previous day; the record before us does not support a conclusion of potential criminal activity. *See id.* ¶ 14 ("Reasonable suspicion develops when the officer becomes aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." (internal quotation marks and citation omitted)).

{12}	Based on the foregoing, we conclude that the officer's questions to Defendant about travel were not supported by reasonable suspicion and thus exceeded the scope of permissible inquiry. "When a motorist is subjected to inquiries unsupported by reasonable suspicion during a vehicle stop, our precedent establishes that the continuing detention of that person is illegal." *Bell*, 2015-NMCA-028, ¶ 19. "Where evidence has been obtained as a result of questions not justified under the [New Mexico Constitution], suppression of that evidence is the proper remedy." *Leyva*, 2011-NMSC-009, ¶ 10. Accordingly, we affirm the district court's order granting Defendant's motion to suppress.

{13}	**IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**