STATE OF NORTH CAROLINA v. KAREN SEAGLE FOREMAN

No. 291PA99

(Filed 5 May 2000)

**1. Search and Seizure— driving while impaired—checkpoint avoidance—criminal activity—reasonable and articulable suspicion**

The Court of Appeals did not err in upholding defendant's DWI conviction based on the conclusion that under the totality of the circumstances, the arresting officer had a reasonable, articulable suspicion that defendant was engaged in criminal activity prior to any seizure because: (1) the officer observed a quick left turn away from the DWI checkpoint at the precise point where the driver of the vehicle would have first become aware of its presence; (2) the officer did not stop defendant's vehicle once it turned away from the checkpoint, or at any point; and (3) after making a quick turn away from the checkpoint, defendant voluntarily parked in a residential driveway and remained hidden in the car until the officer approached the vehicle.

**2. Search and Seizure— driving while impaired—checkpoint avoidance—investigatory stop—minimal intrusion**

Even though the Court of Appeals incorrectly concluded that a legal turn away from a DWI checkpoint upon entering the checkpoint's perimeters cannot justify an investigatory stop, the Court of Appeals did not err in upholding defendant's DWI conviction based on the evidence derived from the police officer's observations because: (1) it is reasonable and permissible for an officer to monitor a checkpoint's entrance for vehicles whose drivers may be attempting to avoid the checkpoint; (2) it necessarily follows that an officer, in light of and pursuant to the totality of circumstances or the checkpoint plan, may pursue and stop a vehicle which has turned away from a checkpoint within its perimeters for reasonable inquiry to determine why the vehicle turned away; and (3) our state's interest in combating intoxicated drivers outweighs the minimal intrusion that an investigatory stop may impose upon a motorist under these circumstances. N.C.G.S. § 20-16.3A.

Chief Justice FRYE concurring.

On discretionary review pursuant to N.C.G.S. § 7A-31 from a unanimous decision of the Court of Appeals, 133 N.C. App. 292, 515 S.E.2d 488 (1999), finding no error in a judgment entered by Ragan, J., on 25 February 1998 in Superior Court, Craven County. On 19 August 1999, the Supreme Court allowed the State's petition for discretionary review as to additional issues. Heard in the Supreme Court 16 February 2000.

*Michael F. Easley, Attorney General, by Jonathan P. Babb, Assistant Attorney General, for the State-appellant and -appellee.*

*Ward, Potter & Brown, P.A., by William F. Ward, III, for defendant-appellant and -appellee.*

LAKE, Justice.

On 16 November 1996, defendant was arrested for driving while impaired (DWI), possession of drug paraphernalia and possession of cocaine. Defendant was subsequently indicted for the DWI charge. On 16 September 1997, defendant was found guilty of DWI in District Court, Craven County, and gave notice of appeal to the superior court. On 12 February 1997, defendant filed a motion to dismiss the charge because there was no probable cause sufficient to justify the stop of her vehicle or, in the alternative, to suppress any evidence obtained from the stop of defendant's vehicle. The trial court denied defendant's motion to dismiss or to suppress, and defendant was tried before a jury at the 23 February 1998 Criminal Session of Superior Court, Craven County. The jury found defendant guilty of DWI. On 25 February 1998, the trial court, *inter alia*, sentenced defendant to a suspended sentence of sixty days in jail with unsupervised probation for two years and revoked her license for one year. Defendant appealed to the North Carolina Court of Appeals.

On appeal, the Court of Appeals found no error. *State v. Foreman*, 133 N.C. App. 292, 515 S.E.2d 488 (1999). In support of its decision, the Court of Appeals concluded that it was not constitutionally permissible for an officer to stop a vehicle which had made a legal turn away from a posted DWI checkpoint. Although we disapprove of the Court of Appeals' conclusion that a legal turn away from a DWI checkpoint, upon entering the checkpoint's perimeters, cannot justify an investigatory stop, we find no error in defendant's conviction. Accordingly, we affirm the decision of the Court of Appeals as modified herein.

The State's evidence tended to show that during the early morning hours of 16 November 1996, officers from the New Bern Police Department were conducting a "DWI Checkpoint" on Neuse Boulevard in New Bern, North Carolina. Notice signs stating that there was a "DWI Checkpoint Ahead" were posted approximately one-tenth of a mile prior to the stop. Officer Doug Ipock was in a police cruiser parked close to the checkpoint's perimeter. His assigned task was to pursue any and all vehicles which appeared to attempt to avoid the checkpoint by turning around or away from it and to determine the basis for such avoidance.

At approximately 2:00 a.m., Officer Ipock observed a small red vehicle traveling on Neuse Boulevard towards the checkpoint. Immediately prior to passing the checkpoint's sign giving notice of the checkpoint, the vehicle made a quick left turn onto Midgette Avenue. Officer Ipock then followed this vehicle and remained approximately thirty to forty yards behind it. Officer Ipock continued to observe the vehicle until it made a second abrupt left turn onto Taylor Street. At this point, Officer Ipock lost sight of the vehicle. After continuing a short distance up and then back down Taylor Street, Officer Ipock ultimately found the vehicle parked in a residential driveway on Taylor Street. The car's lights and ignition were off, and its doors were closed. Officer Ipock directed his bright lights onto the vehicle and also turned on his "take-down lights," thereby enabling the officer to see that people were bent or crouched down inside the car. At this point, the officer radioed for backup and remained in his vehicle until backup arrived, approximately two minutes later. The officer observed that the occupants remained bent or crouched down and that they did not change positions in the vehicle.

Once backup arrived, Officer Ipock approached the vehicle and saw that defendant was sitting in the driver's seat, with the keys still in the ignition. Officer Ipock testified that there were several open containers of alcohol in the vehicle and that the vehicle emitted a "strong odor of alcohol." Additionally, the officer testified that defendant had a strong to moderate odor of alcohol about her person once she exited the vehicle and that she was unsteady on her feet. The officer's observations were admitted into evidence.

[1] Defendant contends that the Court of Appeals erroneously upheld her DWI conviction because the evidence derived from Officer Ipock's observations was inadmissible since his observations were the result of an invalid stop and seizure. Specifically, defendant

argues that at the time she made the legal left turn, just prior to entering the DWI checkpoint, Officer Ipock did not have a reasonable or articulable suspicion of criminal activity, and therefore he had no legal basis to stop her. For the reasons discussed herein, we conclude that the Court of Appeals correctly determined that the arresting officer, under the totality of the circumstances, had a reasonable, articulable suspicion that defendant was engaged in criminal activity prior to any seizure.

This Court has recently reaffirmed the long-standing rule that "[w]hen an officer observes conduct which leads him reasonably to believe that criminal conduct may be afoot, he may stop the suspicious person to make reasonable inquiries." *State v. Pearson,* 348 N.C. 272, 275, 498 S.E.2d 599, 600 (1998). " '[T]he police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion.' " *State v. Thompson,* 296 N.C. 703, 706, 252 S.E.2d 776, 779 (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906 (1968)), *cert. denied,* 444 U.S. 907, 62 L. Ed. 2d 143 (1979). In the instant case, the officer observed a "quick left turn" away from the checkpoint at the precise point where the driver of the vehicle would have first become aware of its presence. However, Officer Ipock did not stop defendant's vehicle once it turned away from the checkpoint. In fact, we cannot conclude that Officer Ipock "stopped" defendant's vehicle at any point. Defendant voluntarily parked in a residential driveway and remained hidden in the car until Officer Ipock approached the vehicle. Therefore, defendant was not "seized" by the police officer until at least that point. Based upon that series of incriminating circumstances, we conclude that the Court of Appeals correctly determined that Officer Ipock observed sufficient activity to raise a "reasonable and articulable suspicion of criminal activity." *Foreman,* 133 N.C. App. at 298, 515 S.E.2d at 493.

**[2]** Although defendant in the case *sub judice* was not stopped because of her legal turn, or at all by the arresting officer, the Court of Appeals stated:

[A] legal left turn at the intersection immediately preceding a posted DWI checkpoint, without more, does not justify an investigatory stop. We emphasize, however, that it is constitutionally permissible, and undoubtedly prudent, for officers to follow vehicles that legally avoid DWI checkpoints, in order to ascertain whether other factors exist which raise a reasonable and articu-

STATE v. FOREMAN

[351 N.C. 627 (2000)]

lable suspicion that an occupant of the vehicle is engaged in criminal activity. . . . Thus, if [d]efendant was seized solely based on a legal left turn preceding the DWI checkpoint, that seizure was unconstitutional.

*Id.* at 296, 515 S.E.2d at 492. For the reasons discussed herein, we disagree and clarify this language.

Although a legal turn, by itself, is *not* sufficient to establish a reasonable, articulable suspicion, a legal turn in conjunction with other circumstances, such as the time, place and manner in which it is made, *may* constitute a reasonable, articulable suspicion which could justify an investigatory stop. As the United States Supreme Court recently stated in *Illinois v. Wardlow*, —— U.S. ——, 145 L. Ed. 2d 570 (2000), "flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at ——, 145 L. Ed. 2d at 576.

Further, the United States Supreme Court has stated:

No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion. . . .

Conversely, the weight bearing on the other scale—the measure of the intrusion on·motorists stopped briefly at sobriety checkpoints—is slight.

*Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 451, 110 L. Ed. 2d 412, 420-21 (1990). Therefore, the United States Supreme Court held that DWI checkpoints are constitutional if vehicles are stopped according to a neutral, articulable standard (e.g., every vehicle) and if the government interest in conducting the checkpoint outweighs the degree of the intrusion. *Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412.

Section 20-16.3A of our General Statutes governs the establishment, organization and management of impaired driving checkpoints and sets forth the bases for "stopping vehicles" at any such checkpoint. That section provides:

A law-enforcement agency may make impaired driving checks of drivers of vehicles on highways and public vehicular areas if the agency:

STATE v. FOREMAN

[351 N.C. 627 (2000)]

(1) Develops a systematic plan in advance that takes into account the likelihood of detecting impaired drivers, traffic conditions, number of vehicles to be stopped, and the convenience of the motoring public.

(2) Designates in advance the pattern both for stopping vehicles and for requesting drivers that are stopped to submit to alcohol screening tests. The plan may include contingency provisions for altering either pattern if actual traffic conditions are different from those anticipated, but no individual officer may be given discretion as to which vehicle is stopped or, of the vehicles stopped, which driver is requested to submit to an alcohol screening test.

(3) Marks the area in which checks are conducted to advise the public that an authorized impaired driving check is being made.

N.C.G.S. § 20-16.3A (1999).

There is no dispute that the DWI checkpoint in the case *sub judice* met all the statutory requirements for an impaired driving checkpoint. The perimeters of the checkpoint were marked with signs stating that there was a DWI checkpoint ahead, and the signs were posted approximately one-tenth of a mile prior to the actual stop. The checkpoint was established with the intent to stop every vehicle briefly and to check for impaired drivers traveling on Neuse Boulevard within the vicinity of the checkpoint. It is obvious that a law-enforcement agency cannot "make impaired driving checks of drivers of vehicles on highways" unless such vehicles can be stopped. Certainly, the purpose of any checkpoint and the above statute would be defeated if drivers had the option to "legally avoid," ignore or circumvent the checkpoint by either electing to drive through without stopping or by turning away upon entering the checkpoint's perimeters. Further, it is clear that the perimeters of the checkpoint or "the area in which checks are conducted" would include the area within which drivers may become aware of its presence by observation of any sign marking or giving notice of the checkpoint. Therefore, we hold that it is reasonable and permissible for an officer to monitor a checkpoint's entrance for vehicles whose drivers may be attempting to avoid the checkpoint, and it necessarily follows that an officer, in light of and pursuant to the totality of the circumstances or the checkpoint plan, may pursue and stop a vehicle which has turned

away from a checkpoint within its perimeters for reasonable inquiry to determine why the vehicle turned away.

Our state's interest in combating intoxicated drivers outweighs the minimal intrusion that an investigatory stop may impose upon a motorist under these circumstances. We therefore conclude that the Court of Appeals correctly found no error in defendant's conviction, and we affirm the decision of the Court of Appeals as modified herein.

MODIFIED AND AFFIRMED.

Chief Justice FRYE concurring.

In this case, the Court of Appeals held that the facts available to Officer Ipock before defendant was seized were sufficient to raise a reasonable and articulable suspicion of criminal activity and that the trial court did not err by denying defendant's motion to suppress. I agree. The majority modifies the Court of Appeals' opinion in order to "disagree [with] and clarify" the Court of Appeals' statement that a legal left turn at the intersection immediately preceding a posted DWI checkpoint does not, without more, justify an investigatory stop. I would affirm the decision of the Court of Appeals without modification.

The key in the Court of Appeals' language is the phrase "without more." Here, as the Court of Appeals indicated, there was more than the left turn which justified the seizure. When Officer Ipock located the vehicle within seconds after it turned onto Taylor Street, the vehicle's engine was not running, the lights were off, and the occupants were crouched down in the dark. These additional factors wer sufficient to raise a reasonable and articulable suspicion of criminal activity before defendant was seized by Officer Ipock.

The Court of Appeals emphasized that it was not only constitutionally permissible, but prudent, for officers to follow vehicles that avoided the DWI checkpoint in order to ascertain whether other factors raised a reasonable and articulable suspicion of criminal activity. However, there is a difference between stopping a vehicle and simply following it. Reasonable and articulable suspicion is necessary for an investigatory stop, but unnecessary to justify following a vehicle. While mere avoidance of a DWI checkpoint may prompt law enforcement officers to follow a vehicle, it does not, alone, give rise to a reasonable and articulable suspicion of criminal activity.

PERKINS v. ARKANSAS TRUCKING SERVS., INC.

[351 N.C. 634 (2000)]

I would add that if a systematic plan for an impaired driving checkpoint pursuant to N.C.G.S. § 20-16.3A provides for stopping every car that turns off the highway within the perimeters of the checkpoint, then it is unnecessary to justify such a stop on the basis of reasonable and articulable suspicion. In such case, the stop is based on the systematic plan rather than the discretion of the officer or an articulable suspicion of criminal activity. However, as the Court of Appeals stated, avoidance of a posted DWI checkpoint, "without more, does not justify an investigatory stop."