2008-NMSC-023

182 P.3d 130

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Julian OCHOA, Defendant–Respondent.**

**No. 30,016.**

Supreme Court of New Mexico.

April 8, 2008.

Gary K. King, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Nina Lalevic, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

MAES, Justice.

{1} Defendant, Julian Ochoa, has appealed a district court decision denying his motion to suppress evidence discovered after Defendant was stopped for a seatbelt violation then arrested on outstanding warrants. Defendant argued to the district court that the stop was pretextual because the officer who reported the seatbelt violation wanted Defendant stopped so the officer could question Defendant in relation to a drug trafficking investigation. Defendant asserted that article II, section 10 of the New Mexico Constitution prohibits pretextual stops. The Court of Appeals reversed the district court on other grounds, holding that the stop violated New Mexico's misdemeanor arrest rule because the violation did not occur in the presence of the officer who stopped Defendant. *State v. Ochoa*, 2006–NMCA–131, ¶ 14, 140 N.M. 573, 144 P.3d 132. We granted certiorari. We reverse the Court of Appeals because the misdemeanor arrest rule does not apply to investigatory traffic stops and hold that the stop was reasonable under the Fourth Amendment to the United States Constitution. We therefore remand to the Court of Appeals to address the pretextual stop issue.

## FACTS AND PROCEEDINGS BELOW

{2} During a drug trafficking investigation, Agent Edmondson, an officer with the Drug Task Force, saw an unfamiliar vehicle

parked at the residence of a suspected drug trafficker. The agent returned several times to check on the vehicle. During one of these checks the agent saw the vehicle driving away from the residence. The agent testified that the driver was not wearing a seatbelt.

{3} Agent Edmondson testified he wanted to identify and question the driver. So, he radioed a uniformed officer, Officer Martinez, to see if the officer could stop the vehicle. Officer Martinez testified that Agent Edmondson told him "there was a black utility vehicle heading north on 7th and the driver wasn't wearing a seatbelt."

{4} Based on Agent Edmondson's information, Officer Martinez located and followed the vehicle. The officer testified that he could not see from behind the vehicle whether the driver was wearing a seatbelt because the car had tinted windows. The officer followed for a short distance then stopped and approached the vehicle. The driver's side window was down and the officer immediately recognized the driver as Defendant, whom the officer knew had outstanding warrants for his arrest. Officer Martinez testified that he did not recall whether Defendant was wearing a seatbelt.

{5} Officer Martinez confirmed the warrants, arrested Defendant, then placed him in the officer's patrol car. Meanwhile, Agent Edmondson and two other officers arrived. Agent Edmondson spoke with Defendant. Defendant gave the agent consent to search the vehicle and told the agent there was a pipe and methamphetamine in the vehicle. The officers found the pipe and, with Defendant's help, the methamphetamine. Officer Martinez also conducted an inventory search and found a handgun. Defendant was charged with possession of a controlled substance and possession of drug paraphernalia.

{6} Defendant's motion to suppress evidence arising from the traffic stop alleged that the vehicle search was in violation of the Fourth Amendment of the United States Constitution and article II, section 10 of the New Mexico Constitution. At the hearing on the motion, Defendant argued that the stop was pretextual because Agent Edmondson's motivation in reporting the seatbelt violation

was to give the agent an opportunity to identify and question Defendant. Defendant argued that—although the Fourth Amendment permits pretextual stops that are otherwise reasonable—article II, section 10 prohibits pretextual stops.

{7} Ruling from the bench, the court held that an officer may act upon information from another officer to enforce traffic laws. The Court found that the information from Agent Edmondson was reliable, and Officer Martinez had reasonable suspicion to stop Defendant's vehicle based on that information. The judge left open the question of whether the stop was invalid as pretextual under the New Mexico Constitution, stating,

I think we have got a fact situation tied up and articulated so that the Supreme Court can make that decision whether Officer Agent Edmondson can radio to another car that he is observing a violation and ask the violator be stopped with reason he would like to understand or find out who the violator is or who the operator is, or who is in the car to ask about the circumstances that had just gone on at the residence.

Defendant entered a conditional guilty plea and appealed the district court's decision to the Court of Appeals.

{8} The Court of Appeals reversed the district court on other grounds, holding that the stop violated the misdemeanor arrest rule. The Court stated that "[s]ince a seatbelt violation is a misdemeanor, our misdemeanor arrest rule requires that the offense be committed in the officer's presence to justify a warrantless arrest for its violation." *Id.* ¶ 8. The Court further held that, in the present case, the seatbelt violation was not committed in Officer Martinez's presence, and no exception to the presence requirement was applicable, therefore the stop was unreasonable. *Id.* ¶¶ 10, 14. The Court did not address whether the stop was pretextual or whether article II, section 10 prohibits pretextual stops.

## DISCUSSION

{9} We review the Court of Appeals' opinion in two steps. We first review the Court of Appeals' reliance on the misdemeanor arrest rule. Then we analyze the reasonable-

ness of the traffic stop. Because we are remanding this case to the Court of Appeals, we will not address the issue of pretextual stops in this opinion.

## I. The Misdemeanor Arrest Rule Does Not Apply to Investigatory Stops

{10} Whether the Court of Appeals properly relied on the misdemeanor arrest rule requires interpretation of established case law. The application and interpretation of law is subject to a de novo review. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) ("We review questions of law de novo.").

{11} The misdemeanor arrest rule is a holdover from the common law distinction between warrantless arrests for felonies and for misdemeanors. The common law rule stated that " 'a constable cannot arrest, but when he sees an actual breach of the peace; and if the affray be over, he cannot arrest.' " William A. Schroeder, *Warrantless Misdemeanor Arrests and the Fourth Amendment,* 50 Mo. L.Rev. 771, 788 (1993) (quoting *Regina v. Tooley,* 2 Lord Raymond 1296, 1301, 92 Eng. Rep. 349, 352 (1710)). As the rule was adopted in New Mexico the strict common law limitations on officers were broadened, such that "the power to arrest for misdemeanors, not breaches or threatened breaches of the peace, has come into being," and the requirement that the officer see the misdemeanor was interpreted to permit warrantless misdemeanor arrests if the officer has probable cause to believe that a misdemeanor was committed in the officer's presence. *Cave v. Cooley,* 48 N.M. 478, 482–83, 152 P.2d 886, 888–89 (1944). Thus, this Court held that "[a] crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case." *Id.* at 482, 152 P.2d at 888 (quoted authority omitted).

{12} Over time, the common law rule has been further limited by both the legislature and the courts. The legislature has created specific exceptions to the "presence" requirement. *See, e.g.,* NMSA 1978, § 66–8–125(B) (1978) (permitting officers in specific circumstances to make a warrantless arrest if "the arresting officer [has] reasonable grounds, based on personal investigation which may include information from eyewitnesses, to believe the person arrested has committed a crime"); NMSA 1978, § 31–1–7(A) (1979) ("Notwithstanding the provisions of any other law to the contrary, a peace officer may arrest a person and take that person into custody without a warrant when the officer is at the scene of a domestic disturbance and has probable cause to believe that the person has committed an assault or a battery upon a household member."). Similarly, New Mexico courts have limited the scope of the misdemeanor arrest rule with the police-team exception to the "presence" requirement. *See State v. Lyon,* 103 N.M. 305, 309, 706 P.2d 516, 520 (Ct.App. 1985) ("[W]e think it a proper extension of the rationale of the misdemeanor arrest rule first adopted in *Cave v. Cooley,* that when a misdemeanor is committed in the presence of a police officer and information of such is promptly placed on the police radio or otherwise communicated and a description of the misdemeanant given, the arrest of the misdemeanant by another police officer within a reasonable time of receipt of the information is valid."); *State v. Marquez,* 103 N.M. 265, 267, 705 P.2d 170, 172 (Ct.App.1985) (applying the "police-team" qualification to the "in the presence of" requirement adopted in *Lyon* ); *see also State v. Warren,* 103 N.M. 472, 477, 709 P.2d 194, 199 (Ct.App.1985) (setting guidelines for the police-team exception applying it both in "situations in which the police officer must call in assistance for such reasons as inherent danger or criminal flight" and "situations involving cooperative police efforts"). Furthermore, this Court has recognized that the original purpose of the rule was to minimize the harm historically associated with lengthy custodial detentions for minor crimes. *Cave,* 48 N.M. at 484, 152 P.2d at 890 (stating that the common law rule of arrests for misdemeanors was developed during a period when "arrests were made by private citizens, when bail for felonies was usually unattainable ... when years might pass before the royal judges

arrived for a jail delivery," and when "a prisoner had an excellent chance of dying of disease before trial"). We, therefore, recognize the misdemeanor arrest rule as a limited doctrine and apply it only to custodial arrests. *See id.*

{13} The Court of Appeals' opinion equated the investigatory traffic stop in the present case with a warrantless, custodial arrest. We disagree. For the purposes of the misdemeanor arrest rule, an investigatory stop is distinct from a custodial arrest.

{14} An investigatory stop occurs when an officer briefly detains and investigates a person based on reasonable suspicion of criminal activity. *State v. Wilson,* 2007–NMCA–111, ¶ 18, 142 N.M. 737, 169 P.3d 1184. Where an officer stops an individual for a traffic violation, NMSA 1978, Section 66–8–123 (1989) governs the officer's conduct:

> Except as provided in Section 66–8–122 NMSA 1978, unless a penalty assessment or warning notice is given, whenever a person is arrested for any violation of the Motor Vehicle Code or other law relating to motor vehicles punishable as a misdemeanor, the arresting officer, using the uniform traffic citation, shall complete the information section and prepare a notice to appear in court, specifying the time and place to appear, have the arrested person sign the agreement to appear as specified, give a copy of the citation to the arrested person and release him from custody.

Section 66–8–123(A). In *State v. Bricker,* 2006–NMCA–052, 139 N.M. 513, 134 P.3d 800, the Court of Appeals stated that "[w]hile [Section 66–8–123] uses the words 'arrest' and 'custody,' we believe the Legislature intended those terms to refer to a temporary detention rather than a traditional custodial arrest in which a person is arrested and taken to the police station for booking." *Id.* ¶ 9. We agree that when an officer stops a car merely to issue a citation for a minor traffic violation, that stop is an investigative detention not a custodial arrest and, therefore, does not invoke the misdemeanor arrest rule.

{15} Applying the misdemeanor arrest rule to these facts would unnecessarily raise the burden on officers for initiating investigatory traffic stops. We have held that to conduct an investigatory stop an officer must be able to point to specific articulable facts " 'that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring.' " *State v. Vandenberg,* 2003–NMSC–030, ¶ 21, 134 N.M. 566, 81 P.3d 19 (quoting *State v. Taylor,* 1999–NMCA–022, ¶ 7, 126 N.M. 569, 973 P.2d 246). Requiring an officer to also observe the violation would be superfluous. We hold that the Court of Appeals improperly applied New Mexico's misdemeanor arrest rule to this case, because the "arrest" at issue was an investigatory stop for a seatbelt violation.

## II. The Stop Was Reasonable Under the Fourth Amendment to the United States Constitution

{16} We next review the reasonableness of the stop under the Fourth Amendment. This issue is a mixed question of law and fact. *State v. Neal,* 2007–NMSC–043, ¶ 15, 142 N.M. 176, 164 P.3d 57. "[W]e review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *Id.*

{17} The Fourth Amendment prohibits unreasonable searches and seizures, and its protections extend to investigatory stops that fall short of custodial arrests. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Neal,* 2007–NMSC–043, ¶ 18, 142 N.M. 176, 164 P.3d 57. The central inquiry under the Fourth Amendment is reasonableness and involves two questions: " 'whether the officer's action was justified at its inception,' " and " 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Neal,* 2007–NMSC–043, ¶ 18, 142 N.M. 176, 164 P.3d 57 (quoting *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889).

{18} In this case, the scope of the officers' conduct was reasonable given the totality of the circumstances. Upon stopping the vehicle, Officer Martinez immediately recognized Defendant and knew that Defendant had outstanding warrants for his arrest. After confirming the warrants, the officer properly

placed Defendant under arrest, at which time Defendant gave consent to search the vehicle. *Cf. Neal*, 2007–NMSC–043, ¶ 20, 142 N.M. 176, 164 P.3d 57 ("Under Fourth Amendment standards, a police officer making a lawful stop 'may conduct an investigation reasonably related to the circumstances that gave rise to the officer's reasons for the stop.'" (quoting *State v. Williamson*, 2000–NMCA–068, ¶ 8, 129 N.M. 387, 9 P.3d 70)). Defendant has not argued, and we do not find, that Defendant's consent to search the vehicle was involuntary or withdrawn at anytime during the search. Therefore, we are concerned only with whether the stop was justified at its inception. *See Neal*, 2007–NMSC–043, ¶ 33, 142 N.M. 176, 164 P.3d 57 ("'For evidence to be admissible, consent must be both voluntary and purged of all taint from a prior illegality.'" (quoting *State v. Prince*, 2004–NMCA–127, ¶ 20, 136 N.M. 521, 101 P.3d 332)).

{19} A stop is justified at its inception if the officer making the stop had a reasonable suspicion that a crime had been or was being committed. *Vandenberg*, 2003–NMSC–030, ¶ 21, 134 N.M. 566, 81 P.3d 19; *Prince*, 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332 ("In the context of a Fourth Amendment analysis, an officer may stop a vehicle when he or she has reasonable suspicion that a traffic law has been violated."). "Reasonable suspicion arises if the officer can point to 'specific articulable facts ... that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring.'" *Vandenberg*, 2003–NMSC–030, ¶ 21, 134 N.M. 566, 81 P.3d 19(alteration in original and internal quotation marks omitted) (quoting *Taylor*, 1999–NMCA–022, ¶ 7, 126 N.M. 569, 973 P.2d 246).

{20} When these specific articulable facts originate from a third-party, then whether the stop was justified depends on the third-party's reliability as the source of such information. Where the third-party is a known, reliable source of information, an officer may reasonably rely on that information. *See State v. Pallor*, 1996–NMCA–083, ¶ 13, 122 N.M. 232, 923 P.2d 599 (finding that information provided by an informant, whom the officer knew to be reliable, provided rea-

sonable suspicion to justify an investigatory stop). Similarly, where the officer independently confirms the third-party's information about a defendant—including the defendant's description or actions—the officer may reasonably rely on that information. *See State v. Urioste*, 2002–NMSC–023, ¶¶ 11–13, 132 N.M. 592, 52 P.3d 964 (finding it is more reasonable that an officer had adequate suspicion where the officer observes a suspect moving or acting in accordance with a tip).

{21} In this case, whether Officer Martinez acted reasonably depends on Agent Edmondson's reliability when he reported the seatbelt violation to Officer Martinez. We find that generally, an officer may reasonably rely on information from another officer that a crime has been or is being committed. Moreover, Agent Edmondson's information was reliable because Officer Martinez personally confirmed Agent Edmondson's description of Defendant's vehicle and its direction of travel. Therefore, Officer Martinez acted reasonably and the stop was justified under the Fourth Amendment.

## CONCLUSION

{22} We hold that the misdemeanor arrest rule does not apply to investigatory stops. We further hold that, under the Fourth Amendment, the stop was reasonable because an officer may reasonably rely on information from another officer that a crime has been or is being committed. Because the Court of Appeals improperly relied on New Mexico's misdemeanor arrest rule, we reverse the Court of Appeals opinion and remand to the Court of Appeals to determine whether the stop was pretextual and, if so, whether article II, section 10 prohibits pretextual stops.

{23} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, RICHARD C. BOSSON, JJ., and RICHARD E. RANSOM, J. Pro Tem.