185 P.3d 1096 (2008)
2008-NMCA-077
STATE of New Mexico, Plaintiff-Appellee,
v.
Nicole ANAYA, Defendant-Appellant.
No. 27,114.
Court of Appeals of New Mexico.
April 18, 2008.
Certiorari Granted May 30, 2008.
Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM for Appellee.
*1097 John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.
Certiorari Granted, No. 31,106, May 30, 2008.

OPINION
CASTILLO, Judge.
{1} In this case, we consider whether an officer legally stopped a driver who made a proper U-turn within sight of a DWI checkpoint. We conclude that the pertinent directive of the checkpoint plan was invalid and that the plan could therefore not substitute for reasonable suspicion. Further, we determine that the officer did not develop reasonable suspicion based on his independent observations. We thus reverse Defendant's convictions.
I. BACKGROUND
{2} On November 20, 2005, the San Juan County Sheriff's Department set up a DWI checkpoint, which was to run from ten in the evening on Saturday until three in morning on Sunday. The police officers set up the checkpoint at the top of a hill, and the droplights and the flashing police lights were visible to the surrounding area. Approaching motorists were also alerted to the checkpoint by a sign placed in the median in the valley before the roadblock. The arresting officer in the present case testified that he had traveled back and forth through the valley several times that night and that the sign was illuminated by the headlights of approaching vehicles.
{3} Two police officers, including the arresting officer, waited in the median before the checkpoint. The arresting officer testified that he was "watching for vehicles turning around, . . . trying to avoid the roadblock," as per the directive he was given during briefing. At approximately two in the morning, Defendant crested the hill before the checkpoint and observed the flashing lights. At the bottom of the hill, Defendant executed a legal U-turn and drove away from the checkpoint in the opposite direction. The arresting officer immediately followed Defendant and commenced a traffic stop. Defendant was ultimately arrested for DWI.
{4} Defendant filed a motion to suppress the evidence obtained as a result of the stop, and she argued that the officer did not have reasonable suspicion that Defendant had committed or was going to commit a crime. The State responded and argued that the officer had acted according to the checkpoint plan. The magistrate court denied Defendant's motion. On May 18, 2006, Defendant pled guilty to DWI in the San Juan County Magistrate Court. She reserved the right to appeal her conviction to the district court on the ground that the initial stop of the vehicle was invalid.
{5} Defendant filed an identical motion to suppress in the district court. After a hearing, the district court conducted its own thorough review of the relevant case law and ultimately agreed with State v. Foreman, 351 N.C. 627, 527 S.E.2d 921 (2000). Foreman stated that "[a]lthough a legal turn, by itself, is not sufficient to establish a reasonable, articulable suspicion, a legal turn in conjunction with other circumstances, such as the time, place and manner in which it is made, may constitute a reasonable, articulable suspicion which could justify an investigatory stop." Id. at 923 (emphasis omitted). The district court denied the motion to suppress on two bases: (1) the stop was authorized by an unchallenged checkpoint plan, and (2) the officer had independent reasonable suspicion to make the stop. Defendant appeals to this Court.
II. DISCUSSION
{6} We review the denial of Defendant's motion to suppress evidence de novo, in order to ascertain whether the district court properly applied the law to the facts. See State v. Aguilar, 2007-NMCA-040, ¶ 6, 141 N.M. 364, 155 P.3d 769. A defendant has the burden to produce evidence of a fourth-amendment violation. State v. Ponce, 2004-NMCA-137, ¶¶ 5, 7, 136 N.M. 614, 103 P.3d 54 (considering the constitutionality of a warrantless arrest and search). If that burden is met, however, the state must present evidence that the search was constitutional. Id. ¶ 7. Defendant argued that the stop was not constitutional-that the officer had no reasonable suspicion to pull her over. The burden was thus on the State to establish that the stop was constitutionally justified.
*1098 A. Checkpoint Plan
{7} The State argues that it was not required to establish that the officer had reasonable suspicion because the stop was made pursuant to a checkpoint plan and, further, because Defendant failed to challenge the checkpoint plan in the district court. Defendant contends that there was no need to challenge the checkpoint plan because the stop was initiated outside the checkpoint itself and because the plan did not give the officer reasonable suspicion to make the stop. At the hearing on Defendant's motion to suppress, the officer stated that he was posted at a location situated before the checkpoint officially began and that Defendant turned around before reaching him. Based on this testimony, we agree that the stop occurred outside the checkpoint. This determination, however, does not answer the question of whether the stop was authorized by a checkpoint plan.
{8} In the present case, the geographical scope of the checkpoint plan is less than clear. We cannot tell what physical space was covered by the plan because the plan itself was not introduced as evidence. The record shows that reference was made to a tactical diagram, which included a drawing that showed the location of signs and cones leading up to the point where vehicles would be stopped. The State specifically requested that the diagram be referred to as a diagram "because it's actually a diagram[,] not the actual plan." The officer testified that during the briefing about the checkpoint, he was given a directive to stop all vehicles with a clear intention of avoiding the roadblock. Although he could not remember the exact wording of the directive, he explained that the actual directive was in the briefing packet.
{9} The trial court assumed, as will we, that the directive and the diagram are part of the plan. The material language of the directive states the following: "[V]ehicles exhibiting an apparent intention to avoid the checkpoint[ ] shall be deemed to have generated reasonable suspicion to be stopped."
{10} The plan is an integral part of the State's argument. According to the State, it was not required to establish that the officer had reasonable suspicion because the stop was made pursuant to a checkpoint plan. We agree that a stop made pursuant to a valid checkpoint plan is legal. In City of Las Cruces v. Betancourt, 105 N.M. 655, 656, 735 P.2d 1161, 1162 (Ct.App.1987), this Court addressed the constitutionality of DWI roadblocks, and we held that "a roadblock is not per se violative of the fourth amendment when motorists are stopped without probable cause or a reasonable suspicion." Id. at 657, 735 P.2d at 1163. We observed that "the question of whether a particular roadblock violates the fourth amendment is basically one of reasonableness," id., and noted that "the reasonableness of any roadblock will be very closely scrutinized." Id. at 658, 735 P.2d at 1164. We also provided a series of guidelines to be considered in order to determine the reasonableness of a checkpoint. Id. at 658-59, 735 P.2d at 1164-65. Those guidelines include (1) the role of supervisory personnel, (2) restrictions on discretion of field officers, (3) safety, (4) reasonableness of the location, (5) time and duration, (6) indicia of the official nature of the roadblock, (7) length and nature of the detention, and (8) advance publicity. Id. We directed "that sobriety roadblocks conducted in accordance with guidelines approximating those we have enumerated are permissible under the fourth amendment to the United States Constitution." Id. at 659, 735 P.2d at 1165.
{11} The State's position is that because the district court determined that "no attack as to [the plan's] propriety was mounted by Defendant," the stop was authorized under a valid plan. While we agree that there was no challenge to the diagram, Defendant did argue to the district court that there was no reasonable suspicion to support a stop outside the official checkpoint. We understand this to be a challenge to the directive that purportedly gave the officer reasonable suspicion to stop "vehicles exhibiting an apparent intention to avoid the checkpoint." Accordingly, we examine the directive.
{12} The district court concluded that because "the plan directs stopping anyone avoiding the checkpoint, it removes the officer discretion that is problematic with sobriety checkpoints." We disagree. In coming to this conclusion, the district court attempts *1099 to address the second guideline enumerated in Betancourtto restrict the discretion of field officers. Id.
{13} The language of the directive allows an officer to evaluate the conduct of an oncoming vehicle and to determine whether the person driving the vehicle exhibits "an apparent intention to avoid the checkpoint." Different officers could evaluate behavior differently in order to determine if there was an apparent intention to avoid the checkpoint. This evaluation therefore gave the officer an opportunity to exercise discretion, and because of this discretion, the officer was required to develop reasonable suspicion to stop the vehicle. We review such determinations under a de novo inquiry that requires an application of the law to the facts. State v. Templeton, 2007-NMCA-108, ¶ 8, 142 N.M. 369, 165 P.3d 1145. Our Supreme Court has explained that "[i]t is . . . the duty of appellate courts to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context." State v. Neal, 2007-NMSC-043, ¶ 19, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted). Regardless of the language in the checkpoint plan, reasonable suspicion cannot be determined by the officer in advance. It is a fact-specific inquiry and thus requires analysis of the particular observations made by the police officer at the time the stop was made. See id. ¶ 18.
{14} Moreover, we observe that the Betancourt analysis is not designed to determine reasonable suspicion. Instead, a valid checkpoint plan operates as a constitutionally adequate substitute for reasonable suspicion. State v. Bolton, 111 N.M. 28, 801 P.2d 98 (Ct.App.1990), explains that "[t]he reasonableness of a roadblock provides a constitutionally adequate substitute for the reasonable suspicion that would otherwise be required to justify the detention of vehicles and the questioning of their occupants." Id. at 32, 801 P.2d at 102. In the case at hand, the directive states that if an officer evaluates a driver's behavior and concludes that the driver had an intention to evade the checkpoint, that officer is deemed to have reasonable suspicion. We conclude that the directive is invalid under the Betancourt guidelines. As a result, the directive could not operate as a "constitutionally adequate substitute for . . . reasonable suspicion." Id. We now turn to the arguments regarding the existence of reasonable suspicion in this case.
B. Reasonable Suspicion
{15} Defendant argues that the officer lacked the requisite reasonable suspicion to stop her vehicle and investigate. As stated earlier, we determine de novo whether an officer had reasonable suspicion. Templeton, 2007-NMCA-108, ¶ 8, 142 N.M. 369, 165 P.3d 1145. In order to make a constitutional traffic stop, an officer is generally required to develop reasonable suspicion that a law has been violated. Aguilar, 2007-NMCA-040, ¶ 8, 141 N.M. 364, 155 P.3d 769. "A reasonable suspicion must be a particularized suspicion, based on all the circumstances, that the specific individual detained has broken or is breaking the law." Id. ¶ 9.
{16} Among our sister states, there is a difference of opinion regarding whether a driver's apparent attempt to evade a DWI checkpoint provides an officer with reasonable suspicion to stop the vehicle. Shan Patel, Note, Per Se Reasonable Suspicion: Police Authority to Stop Those Who Flee from Road Checkpoints, 56 Duke L.J. 1621, 1638 (2007) ("Courts have differed over whether avoiding a checkpoint grants officers per se reasonable suspicion to stop a motorist."). Some courts have considered the totality of the circumstances and have thus required the officer or officers to show facts apart from the act of turning away from the checkpoint. See Jorgensen v. State, 207 Ga.App. 545, 428 S.E.2d 440, 440-41 (1993); State v. Heapy, 113 Hawai`i 283, 151 P.3d 764, 773 (2007); People v. Scott, 277 Ill.App.3d 579, 214 Ill. Dec. 110, 660 N.E.2d 555, 559 (1996); State v. McCleery, 251 Neb. 940, 560 N.W.2d 789, 793 (1997); Foreman, 527 S.E.2d at 923-24; Commonwealth v. Scavello, 703 A.2d 36, 38-39 (Pa.Super.Ct.1997); State v. Binion, 900 S.W.2d 702, 706 (Tenn.Crim.App.1994); State v. Talbot, 792 P.2d 489, 493 (Utah Ct.App. 1990); Bass v. Commonwealth, 259 Va. 470, 525 S.E.2d 921, 923-25 (2000). Other courts have concluded that the simple act of turning away from a checkpoint is sufficient to create reasonable suspicion. See Coffman v. State, *1100 26 Ark.App. 45, 759 S.W.2d 573, 575 (1988); Snyder v. State, 538 N.E.2d 961, 965 (Ind.Ct. App.1989); Boches v. State, 506 So.2d 254, 264 (Miss.1987); State v. Thill, 474 N.W.2d 86, 88 (S.D.1991); Stroud v. Commonwealth, 6 Va.App. 633, 370 S.E.2d 721, 723 (1988).
{17} Whether the act of making a legal turn away from a checkpoint is sufficient to create reasonable suspicion to stop the vehicle is an issue of first impression in New Mexico. We agree with the district court and conclude that the law regarding reasonable suspicion in New Mexico supports the reasoning of the Foreman court. "Although a legal turn, by itself, is not sufficient to establish a reasonable, articulable suspicion, a legal turn in conjunction with other circumstances . . . may constitute a reasonable, articulable suspicion which could justify an investigatory stop." Foreman, 527 S.E.2d at 923.
{18} Despite our acceptance of Foreman, we disagree with the district court that there were sufficient other circumstances to create reasonable suspicion to justify stopping Defendant. In Aguilar, we considered a case in which a police officer stopped a vehicle at two in the morning because the vehicle had temporary dealer plates and because "[t]he officer knew that these types of plates are often misused or stolen." 2007-NMCA-040, ¶ 10, 141 N.M. 364, 155 P.3d 769. During the suppression hearing, the officer testified "that the only thing [the d]efendant `did wrong' was to drive a vehicle with a temporary demonstration plate at 2 a.m." Id. In the present case, the arresting officer testified that he did not develop any suspicion that Defendant was breaking the law. The action that caught the arresting officer's attention was a legal U-turn at two in the morning, outside the physical parameters of a DWI checkpoint.
{19} The district court found that the arresting officer had reasonable suspicion to stop Defendant based on the following facts: it was two in the morning, Defendant crested a hill from which the lights of the checkpoint were visible, and Defendant made a U-turn in front of a visible sign that announced the checkpoint. We disagree that these facts are sufficient to create independent reasonable suspicion. There is no statute that prohibits a driver from evading a checkpoint. The facts upon which the district court relied are thus legal acts. We conclude in the present case, as we did in Aguilar, that "[t]hese circumstances amount to nothing more than a generalized suspicion that there was a possibility that [a d]efendant might have been" breaking the law. Id. Accordingly, we hold that the arresting officer did not have reasonable suspicion to make the stop.
III. CONCLUSION
{20} We compliment the district court for its thoughtful and thorough review of the law regarding checkpoints. Our own review and analysis, however, compel us to reverse the denial of Defendant's motion to suppress the evidence obtained from the stop of her vehicle.
{21} IT IS SO ORDERED.
WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.