# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-043

Filing Date: August 25, 2009

Docket No. 31,106

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

NICOLE ANAYA,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
William C. Birdsall, District Judge

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Hugh W. Dangler, Chief Public Defender
Vicki W. Zelle, Assistant Appellant Defender
Albuquerque, NM

for Respondent

## OPINION

MAES, Justice.

{1}     Nicole Anaya (Defendant) filed a motion to suppress evidence arising from an investigatory stop initiated after she made a lawful U-turn within sight of a DWI checkpoint. The district court denied Defendant's motion, concluding that the stop was supported by reasonable suspicion.  Defendant pleaded guilty to driving under the influence of intoxicating liquor (DWI), contrary to NMSA 1978, Section 66-8-102 (2005, prior to amendments through 2008), but reserved the right to appeal the reasonableness of the stop. The Court of Appeals reversed the district court, holding that, because evading a checkpoint is not an illegal act, the stop was unsupported by reasonable suspicion. *State v. Anaya*, 2008-NMCA-077, ¶ 19, 144 N.M. 246, 185 P.3d 1096.  The Court of Appeals further held that the DWI checkpoint was constitutionally unreasonable under the guidelines set forth in *Las Cruces v. Betancourt*, 105 N.M. 655, 658-59, 735 P.2d 1161, 1164-65 (Ct. App. 1987), and therefore, could not substitute for the absence of reasonable suspicion. *Anaya*, 2008-NMCA-077, ¶ 14.  We conclude, however, that Defendant's actions and the surrounding circumstances evinced an attempt to evade the checkpoint, which gave rise to a reasonable

1

suspicion that she was driving while intoxicated. Accordingly, we reverse the Court of Appeals and affirm Defendant's conviction and sentence.

**FACTS**

**{2}** The district court could have found the following facts. The San Juan County Sheriff's Department set up a DWI checkpoint, which operated between the hours of ten in the evening on Saturday, November 19, 2005, and three in the morning on Sunday, November 20, 2005. Officers placed the checkpoint at the top of a hill on NM516 between Farmington and Aztec, New Mexico. Cones, droplights, and flashing emergency lights were visible to the surrounding area, indicating police activity to approaching motorists. The officers also placed signs that alerted motorists to the upcoming checkpoint. In particular, one sign was placed in the median visible to motorists traveling from Farmington toward the west side of the checkpoint. The arresting officer testified that he had traveled toward and away from the west side of the checkpoint several times that night and that the sign was illuminated by headlights and was visible to approaching vehicles.

**{3}** The arresting officer testified that he was given a briefing packet, which directed him to stop any vehicles that displayed a clear intention of avoiding the checkpoint. Pursuant to that directive, the officer was stationed in his patrol car, in the median, a short distance behind the sign indicating the checkpoint, and he was to "watch[] for vehicles turning around, . . . trying to avoid the roadblock."

**{4}** The arresting officer testified that at approximately two in the morning he saw Defendant's vehicle approaching the west side of the checkpoint, traveling away from Farmington. Then, as the vehicle approached, it made a U-turn and began traveling in the opposite direction. According to the officer's testimony and a diagram of the area entered into evidence, the sign indicating the upcoming DWI checkpoint was situated at the intersection where Defendant made a legal U-turn. The officer testified that he believed the vehicle was trying to avoid the checkpoint. The officer immediately followed Defendant's vehicle, engaged his emergency lights, and stopped the vehicle for a suspected DWI. Defendant failed all the field sobriety tests and was ultimately arrested for DWI. Results of a breath test indicated that Defendant had a blood-alcohol content of .11 and .10.

**{5}** Defendant was originally tried in magistrate court, where she filed a motion to suppress the evidence obtained as a result of the stop, arguing that the officer did not have reasonable suspicion to believe that Defendant had committed or was going to commit a crime. The magistrate court denied the motion to suppress, and Defendant entered a plea of nolo contendere to DWI, reserving the right to challenge the stop in the district court.

**{6}** The motion filed in district court concerned whether the officer had reasonable suspicion to stop Defendant's vehicle. The court held a hearing and conducted a thorough review of the relevant case law. The district court noted that, as to the validity of the checkpoint plan, "no attack as to its propriety was mounted by Defendant." Nonetheless, the court stated that because the plan "removes the officer's discretion that is problematic with sobriety checkpoints . . . the stop can be justified as part of the checkpoint plan." However, because the validity of the checkpoint plan was not argued, the district court's analysis focused on the reasonableness of the stop based on the totality of the circumstances. The court found that "[t]he defendant, [was] driving at around 2 A.M. in the morning, [and] ma[de] a U-turn on the highway at an intersection right in front of a visible sign announcing the checkpoint just after cresting a hill where the checkpoint lights would have been visible."

2

The court stated that it "sid[ed] with [*State v. Foreman*]," which held that "[a]lthough a legal turn, by itself, is *not* sufficient to establish a reasonable, articulable suspicion, a legal turn in conjunction with other circumstances, such as the time, place and manner in which it is made, *may* constitute a reasonable, articulable suspicion which could justify an investigatory stop." 527 S.E.2d 921, 923 (N.C. 2000). Accordingly, based on the facts available to the officer, the court found that the officer had reasonable suspicion to stop Defendant's vehicle and denied Defendant's motion to suppress.

**{7}** Following the district court's denial of her motion, Defendant entered a conditional guilty plea to DWI. In her plea, Defendant reserved the right to appeal "the reasonableness of the stop to a higher court."

**{8}** Defendant appealed to the Court of Appeals, which reversed the denial of Defendant's motion to suppress. *Anaya*, 2008-NMCA-077, ¶ 20. The Court of Appeals questioned the constitutionality of the officer's directive to stop vehicles attempting to avoid the checkpoint under the guidelines set forth in *Betancourt*. *Anaya*, 2008-NMCA-077, ¶ 10. Relying on the officer's testimony, the Court construed the officer's directive under the checkpoint plan as follows: "[I]f an officer evaluates a driver's behavior and concludes that the driver had an intention to evade the checkpoint, that officer is deemed to have reasonable suspicion." *Id.* ¶ 14. The Court held that the directive did not sufficiently restrict the officer's discretion, as required under *Betancourt*, and therefore, the checkpoint plan was a constitutionally inadequate substitute for reasonable suspicion. *Anaya*, 2008-NMCA-077, ¶ 10.

**{9}** The Court then addressed whether the officer had an independent reasonable suspicion to stop Defendant. The Court summarized the relevant facts, stating that "it was two in the morning, Defendant crested a hill from which the lights of the checkpoint were visible, and Defendant made a U-turn in front of a visible sign that announced the checkpoint." *Id.* ¶ 19. The Court held that, because these facts involved only legal acts, they did not create a reasonable suspicion that Defendant was committing a crime:

> There is no statute that prohibits a driver from evading a checkpoint. The facts upon which the district court relied are thus legal acts. We conclude . . . that [t]hese circumstances amount to nothing more than a generalized suspicion that there was a possibility that [Defendant] might have been breaking the law.

*Id.* ¶ 19 (second alteration in original) (internal quotation marks and citation omitted). The Court of Appeals reversed the district court and granted Defendant's motion to suppress.

**{10}** We granted the State's petition for writ of certiorari pursuant to NMSA 1978, Section 34-5-14(B) (1966, as amended through 1972) and Rule 12-502 NMRA to determine: (1) whether the Court of Appeals erroneously held that the officer did not have reasonable suspicion to stop Defendant; (2) "[w]hether the Court of Appeals lacked jurisdiction to address the validity of the DWI checkpoint plan, because Defendant did not reserve that issue in her conditional guilty plea"; and (3) "[w]hether the Court of Appeals erroneously held that Defendant was not stopped in accordance with a valid DWI checkpoint plan." *State v. Anaya*, 2008-NMCERT-005, 144 N.M. 332, 187 P.3d 678.

**DISCUSSION**

**{11}** Stopping motor vehicles for the purpose of investigating suspected drunk driving constitutes a seizure under the Fourth Amendment, and therefore, to be justified at its inception the stop must be supported by reasonable suspicion. *State v. Ochoa*, 2008-NMSC-023, ¶ 19, 143 N.M. 749, 182 P.3d 130. "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). However, we review the district court's factual findings under a substantial evidence standard. *Ochoa*, 2008-NMSC-023, ¶ 16.

**{12}** "Reasonable suspicion arises if the officer can point to specific articulable facts . . . that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* ¶ 19 (alteration in original) (internal quotation marks and citations omitted). However, reasonable suspicion does not require the officer to observe illegal activity. *Cf. State v. Williamson*, 2009-NMSC-039, ¶ 34, __ N.M. __, __ P.3d __ ("[A]lthough Defendant's conduct was lawful, . . . the facts and circumstances alleged in the affidavit, when viewed together, made it reasonable to infer that, more likely than not, the package contained illegal narcotics.").

**{13}** There is no state law prohibiting evading a DWI checkpoint, and the U-turn Defendant made within sight of the checkpoint was legal. Therefore, the question in the present case is whether the totality of the circumstances allowed the officer reasonably to conclude that Defendant was committing the crime of driving while intoxicated.

**{14}** To answer this question, we must consider the perimeters of the checkpoint as part of the circumstances of the officer's observations. As the *Foreman* court stated, "it is clear that the perimeters of the checkpoint or 'the area in which checks are conducted' would include the area within which drivers may become aware of its presence by observation of any sign marking or giving notice of the checkpoint." 527 S.E.2d at 924. That court concluded:

> [W]e hold that it is reasonable and permissible for an officer to monitor a checkpoint's entrance for vehicles whose drivers may be attempting to avoid the checkpoint, and it necessarily follows that an officer, in light of and pursuant to the totality of the circumstances or the checkpoint plan, may pursue and stop a vehicle which has turned away from a checkpoint within its perimeters for reasonable inquiry to determine why the vehicle turned away.

*Id.*

**{15}** Evading a marked DWI checkpoint is a specific and articulable fact that is sufficient to predicate reasonable suspicion for an investigatory stop. *See, e.g.*, *Foreman*, 527 S.E.2d at 923 (concluding that where "the officer observed a 'quick left turn' away from the checkpoint at the precise point where the driver of the vehicle would have first become aware of its presence," the officer observed "sufficient activity to raise a 'reasonable and articulable suspicion of criminal activity'" (citation omitted)). To conclude otherwise would permit drivers to flagrantly avoid DWI checkpoints without consequence, thereby undermining the efficacy of such checkpoints in deterring DWI. *Steinbeck v. Commonwealth*, 862 S.W.2d 912, 914 (Ky. Ct. App. 1993); *see Snyder v. State*, 538 N.E.2d 961, 966 (Ind. Ct. App. 1989) ("The alternative is to tell police officers that in spite of their experience, they may not infer from a driver's attempt to avoid a roadblock that the driver

4

is very likely engaged in the commission of a crime. Such a rule would seem to tell police officers to 'ignore reality.'"); *Foreman*, 527 S.E.2d at 924 ("Certainly, the purpose of any checkpoint and the above statute would be defeated if drivers had the option to 'legally avoid,' ignore or circumvent the checkpoint by either electing to drive through without stopping or by turning away upon entering the checkpoint's perimeters.").

**{16}** We agree with the Court of Appeals that "'a legal turn, by itself, is *not* sufficient to establish a reasonable, articulable suspicion, [but] a legal turn in conjunction with other circumstances . . . *may* constitute a reasonable, articulable suspicion which could justify an investigatory stop.'" *Anaya*, 2008-NMCA-077, ¶ 17 (quoting *Foreman*, 527 S.E.2d at 923). We disagree, however, with the Court's statement that, because Defendant's acts were legal, "[t]hese circumstances amount to nothing more than a generalized suspicion that there was a possibility that [a d]efendant might have been breaking the law." *See id.* ¶ 19 (alteration in original) (internal quotation marks and citation omitted). If a driver is on notice that the checkpoint is ahead, then, where the driver turns away from the checkpoint and the circumstances lead the officer reasonably to believe that the driver is attempting to evade the checkpoint, the officer may form a reasonable suspicion that the driver is driving while intoxicated.

**{17}** We emphasize that whether a stop is supported by reasonable suspicion should be determined on a case-by-case basis. *See State v. Duran*, 2005-NMSC-034, ¶ 34, 138 N.M. 414, 120 P.3d 836. The conclusion that a driver is attempting to avoid a checkpoint may be unreasonable in light of the circumstances of the stop—the time of day, the proximity of the turn to the checkpoint, or whether the driver's actions were typical considering the layout of the area and the normal flow of traffic. *See Steinbeck*, 862 S.W.2d at 914 ("We believe that appellant's turn away from the sobriety checkpoint, coupled with the deputy sheriff's experience in similar instances, the time of day, and the nature of the roadway onto which the appellant turned, constitute specific, reasonable, and articulable facts which allowed the police officer to draw an inference sufficient to form a reasonable suspicion that the driver might have been engaging in criminal activity.").

**{18}** Approaching the checkpoint, Defendant was in a position to observe police emergency lights and other lights illuminating the checkpoint. Additionally, the district court found that Defendant made a U-turn "at an intersection right in front of a visible sign announcing the checkpoint," such that Defendant was on notice of the approaching checkpoint. Defendant then proceeded in the opposite direction of travel, which was inconsistent with typical driving patterns given the location of the highway. In light of these facts, the officer reasonably could have believed that Defendant was attempting to evade the checkpoint. Accordingly, we conclude that the officer had reasonable suspicion to initiate the stop.

**{19}** Because we conclude that the officer had reasonable suspicion to stop Defendant, we need not determine whether Defendant properly reserved a challenge to the validity of the DWI checkpoint in her conditional guilty plea or whether the Court of Appeals erroneously held that Defendant was not stopped in accordance with a valid DWI checkpoint plan. *See State v. Duarte*, 2007-NMCA-012, ¶ 33, 140 N.M. 930, 149 P.3d 1027 ("[T]he reasonableness of a roadblock provides a constitutionally adequate substitute for the reasonable suspicion that would otherwise be required to justify the detention of vehicles and the questioning of their occupants." (Internal quotation marks and citation omitted.)).

**CONCLUSION**

{20}   For these reasons, we reverse the Court of Appeals and affirm Defendant's conviction and sentence.

{21}   **IT IS SO ORDERED.**


_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Anaya*, No. 31,106**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-RS | Reasonable Suspicion |
| CA-RK | Roadblocks |